ON FOURTH REMAND
Before: TALBOT, P.J., and SAAD and FORT HOOD, JJ.
TALBOT, EJ.
This original action to enforce the Headlee Amendment[1] returns to us by virtue of our Supreme Court’s May 24, 2013 order to articulate on the record our specific factual findings regarding the amount of attorney fees that are properly compensable for Phase II of these proceedings and to enter an award in favor of plaintiffs consistent with our findings. Adair v Michigan, 494 Mich 852 (2013). After our review of the record, the report of the special master, the objections of *552 the parties, and the applicable caselaw, we direct plaintiffs to submit an amended statement of attorney fees that conforms to our decision.
REASONABLE ATTORNEY FEES
As we observed in Adair v Michigan (On Third Remand), 298 Mich App 383, 391; 827 NW2d 740 (2012), rev’d in part 494 Mich 852 (2013):
The party requesting an award of attorney fees bears the burden of proving the reasonableness of the fees requested. Smith [v Khouri] 481 Mich [519, 528; 751 NW2d 472 (2008)] (opinion by TAYLOR, C.J.). Smith establishes an analytical framework to guide the lower courts in determining what constitutes a “reasonable fee.” In general terms, the Smith framework requires a trial judge to determine a baseline reasonable hourly or daily fee rate derived from “reliable surveys or other credible evidence” showing the fee customarily charged in the locality for similar legal services. Id. at 530-531, 537. Once the trial judge has determined this hourly rate, the judge must multiply this rate by the reasonable number of hours expended in the case. The product of this calculation serves as the “starting point for calculating a reasonable attorney fee.” Id. at 531, 537. Finally, the trial judge may make up-or-down adjustments to the fee after considering certain factors enumerated in Rule 1.5(a) of the Michigan Rules of Professional Conduct and Wood v DAIIE, 413 Mich 573; 321 NW2d 653 (1982), and any additional relevant factors. Smith, 481 Mich at 529-531, 537 (opinion by Taylor, C.J.).
Because the instant case is one to enforce the provisions of the Headlee Amendment, we also take into consideration the intent of Const 1963, art 9, § 32, which is to reimburse the taxpayer for the costs of maintaining the suit, Macomb Co Taxpayers Ass’n v L’Anse Creuse Pub Sch, 455 Mich 1, 8-10; 564 NW2d 457 (1997), and the balancing of the need to reimburse *553 the taxpayer who brought suit against the potential harm to state taxpayers who must pay the costs awarded, Durant v Michigan, 456 Mich 175, 213; 566 NW2d 272 (1997).
Finally, we take guidance from the admonition in Smith that the analytical framework it established
is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls. Rather, it only permits an award of a reasonable fee, i.e., a fee similar to that customarily charged in the locality for similar legal services, which, of course, may differ from the actual fee charged or the highest rate the attorney might otherwise command. [Smith, 481 Mich at 528 (opinion of TAYLOR, C.J.) (citations omitted).
“ [Reasonable fees ‘are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.’ ” Id., quoting Coulter v Tennessee, 805 F2d 146, 149 (CA 6, 1986).
REASONABLE HOURLY RATE
The Smith Court offered the following guidance with regard to determining the hourly rate customarily charged:
The reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney’s work. “The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.” Eddleman v Switchcraft, Inc, 965 F2d 422, 424 (CA 7, 1992) (citation and quotation [marks] omitted). We emphasize that “the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney’s own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.” Blum v *554 Stenson, 465 US 886, 895 n 11; 104 S Ct 1541; 79 L Ed 2d 891 (1984). The fees customarily charged in the locality for similar legal services can be established by testimony or empirical data found in surveys and other reliable reports. But we caution that the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality. Both the parties and the trial courts of this state should avail themselves of the most relevant available data. For example, as noted earlier, in this case defendant submitted an article from the Michigan Bar Journal regarding the economic status of attorneys in Michigan. [Smith, 481 Mich at 531-532 (opinion by Taylor, C.J.) (citation omitted).]
Before the special master, A. David Baumhart, III, plaintiffs presented the testimony of Fred M. Mester, a retired Oakland Circuit judge, to establish a baseline reasonable hourly rate of compensation for each attorney seeking to recover a reasonable fee in this matter. According to Mester, consistently with Smith, he began by determining the customary fee charged in the locality for similar legal services. To make this determination, he examined the Economics of Law Practice in Michigan surveys published by the State Bar of Michigan for 2000, 2003, 2007, and 2010 to determine the market rate for the attorneys’ work in this case. Mester disregarded the 2000 study as irrelevant because the survey was published before this case commenced and because the data contained in the survey “look[ed] backwards[.]” He did consider the 2003 and 2007 surveys, but found the 2010 survey most useful and, thus, gave more weight to the 2010 survey to guide his calculations because the 2010 survey results were based on a larger sampling of lawyers and law firms. Nevertheless, he used the results of the 2003 and 2007 surveys to lower his baseline hourly rate calculation. Next, Mester con- *555 eluded that the applicable area of practice for calculating a market rate was appellate practice
because appellate law is basically what this case is all about. The case of original jurisdiction was in the appellate courts. The matter was before the Supreme Court on at least three different occasions. We know that all appellate matters have another basic foundation in law that has to start the case at the trial level, but this matter dealt basically with appeals and argument before the Court of Appeals and Supreme Court of the State of Michigan.
After deciding that the appellate practice was the applicable area of practice, he reviewed the 2010 survey and learned that the mean hourly rate for the appellate field of practice was $259; that the mean hourly rate for Oakland County, where the offices of plaintiffs’ attorneys were located, was $254; that the mean hourly rate for law firms located in Oakland County south of M-59 was $260; and that the mean hourly rate for law firms of a comparable size was $292. He averaged these means and arrived at an average mean hourly rate of $266. After he made these calculations, Mester concluded that a $250-an-hour rate would be an appropriate hourly base rate for all eight attorneys who billed hours in this case.
Mester did not determine the reasonableness of the hours billed, however, which is the second step of the Smith framework, because he was not asked to do so by plaintiffs and because he “didn’t see that as my responsibility.” Rather, he proceeded to the third step of the Smith framework. Mester concluded that there were numerous considerations that warranted an upward adjustment of the hourly rate for Dennis Pollard, Richard Kroopnick, and William E Hampton, attorneys for plaintiffs. These considerations included the outstanding quality of work exhibited by these attorneys in this *556 case and other cases over the course of their respective careers, the professional standing of these attorneys, the reputation of Pollard and Kroopnick as pertains to Headlee matters, the length and complexity of the case, the extensive discovery and briefing needed, their having obtained a declaratory judgment that resulted in a $25 million appropriation by the Legislature, the incurring of $200,000 in costs that the attorneys “carried,”[2] and the length of the attorneys’ relationship with the school districts, which dated back to the 1970s. With these considerations in mind, Mester adjusted the $250 hourly rate upward to $450 an hour for Pollard, Kroop-nick, and Hampton. He made no adjustment to the $250 hourly rate for the remaining five attorneys who assisted Pollard and Kroopnick: Kari Costanza, Mark Roberts, Daniel Villaire, Robert Schindler, and Matthew Drake.
We find the testimony of Mester to be unhelpful, as did the special master, and, therefore, we disregard his testimony. As observed in Smith, the market rate for an attorney’s work is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question. Smith, 481 Mich at 531 (opinion of TAYLOR, C.J.). Smith directs that the market rate for an attorney’s work be determined separately for each attorney who seeks to recover a reasonable fee. Id. at 534; see also Augustine v Allstate Ins Co, 292 Mich App 408, 439; 807 NW2d 77 (2011). In the present case, Mester concluded that a base rate of $250 was appropriate for all eight attorneys seeking to recover their respective reasonable fees. Mester treated Pollard, who has been in practice for 42 years, has more than three decades of *557 experience in Headlee Amendment litigation, and has been lead counsel in this case, as having a similar ability and experience in the community as Schindler, who has been in practice since 2007 and has little experience in matters concerning the Headlee Amendment. This decision to treat each attorney as having equal ability and experience unequivocally establishes that Mester failed to correctly apply the Smith methodology. His conclusions about what constitutes a reasonable rate of hourly compensation for each attorney are inconsistent with the strictures of Smith and, therefore, are both unreliable and unhelpful. See Van Elslander v Thomas Sebold & Assoc, Inc, 297 Mich App 204, 232-233; 823 NW2d 843 (2012) (stating that testimony that relies on subjective, self-serving, and anecdotal evidence is inconsistent with the strictures of Smith and unhelpful). Plaintiffs’ assertion to the contrary notwithstanding, the mere fact that the state presented no witnesses to contradict the calculations of Mester does not require that we accept those calculations.
Likewise, we place no import on the testimony of Pollard that an hourly rate of $450 constituted reasonable compensation for himself and Kroopnick. His testimony reflects nothing more than a ratification of Mester’s discredited opinion testimony. For this same reason, we disregard the testimony of Pollard that an hourly rate of $250 would be reasonable compensation for Roberts, Villaire, Schindler, and Drake.
Instead, we find relevant to our determination of a reasonable hourly rate the fact that plaintiffs and their attorneys entered into a fee agreement in 2000 pursuant to which the school districts agreed to compensate all attorneys providing services in this case at an hourly rate of $175. The hourly rate actually paid by plaintiffs, although “clearly not dispositive of what constitutes a *558 reasonable fee, is a factor to be considered in determining market place value as it is reflective of competition within the community for business and typical fees demanded for similar work.” Van Elslander, 297 Mich App at 234. We also find relevant the following surveys published by the State Bar of Michigan: The 2000 Desktop Reference on the Economics of Law Practice in Michigan; Economics of Law Practice (2003); 2007 Economics of Law Practice Summary Report; and 2010 Economics of Law Practice Attorney Income and Billing Rate Summary Report.[3] These surveys provide some reliable empirical evidence of market rates. Smith, 481 Mich at 530-532 (opinion of TAYLOR, C.J.).
We begin our analysis of what constitutes a reasonable hourly rate of compensation for each of plaintiffs’ attorneys by acknowledging that plaintiffs rely heavily on data generated by the State Bar pertaining to the appellate area of practice and that the special master relies, instead, on the data pertaining to the municipal law area of practice. We also acknowledge, however, that actions to enforce the Headlee Amendment, like this one, are sui generis. Such actions, if originally brought in this Court, are part appellate proceeding and, to the extent that the services of a special master are employed, they are also part trial proceeding in that they involve discovery, motion practice, and litigation. The practice areas listed and surveyed by the State Bar do not fully reflect the hybrid nature of these proceedings or the limited and specialized market for attorneys who are familiar with the operation of the Headlee Amendment. Thus, any attempt on our part to shoehorn this matter into one of the areas of practice identified in the various surveys of the State Bar serves no useful *559 purpose. “The reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney’s work.” Id. at 531. The market for other areas of legal practice with broader client bases and greater demand provide no probative information regarding what constitutes the proper market for the provision of the specialized legal services associated with the enforcement of the Headlee Amendment.
Smith clearly contemplates that the trier of fact must independently review these State Bar surveys and determine what information contained in those surveys is most relevant and helpful to a determination of the market rate for each attorney for whom a reasonable attorney fee is sought. Id. at 530-532, 537. Because this Court sits as the trial court in this action, we exercise that power of independent review and reject any reliance on the data associated with the areas of practice surveys. Instead, we rely on the data collected statewide with regard to years in practice. We do so because plaintiffs’ attorneys represent school districts and taxpayers located throughout the state and because plaintiffs chose this Court, which has statewide jurisdiction, as the court in which to commence their original action, rather than a circuit court with limited territorial jurisdiction, as allowed by MCL 600.308a(l). We also do so because the number of years in practice reflects how experience and demand may be compensated on an hourly basis. Finally, we observe that in 2003, the median hourly billing rates for attorneys with the same years in practice as the two lead counsels in this case, Pollard and Kroopnick ($175 an hour for Pollard and $180 an hour for Kroopnick), were consistent with the $175-an-hour rate plaintiffs’ attorneys were charging plaintiffs at that time. As we previously observed, “the actual fee charged ... is a factor to be considered in *560 determining market place value as it is reflective of competition within the community for business and typical fees demanded for similar work.” Van Elslander, 297 Mich App at 234. For these reasons, we conclude that the data reported in the 2003, 2007, and 2010 surveys regarding the years in practice is the “most relevant available data.” Smith, 481 Mich at 532 (opinion of Taylor, C.J.).
Based on our review of the 2003, 2007, and 2010 surveys and the years of practice for each of plaintiffs’ six attorneys,[4] we find that a reasonable hourly rate for Pollard and Kroopnick is $210, that a reasonable hourly rate for Schindler, Villaire, and Drake is the contract hourly rate of $175, and that a reasonable hourly rate for Costanza is her actual billing rate of $140.
REASONABLE NUMBER OF HOURS EXPENDED
The special master found the number of hours expended by plaintiffs’ attorneys during the phase II prosecution of the recordkeeping claim to have been reasonable and necessary with the following exceptions:
During Phase II, Plaintiffs’ attorneys expended some time on tasks that were not related to litigating the record keeping claim, including preparing a motion for reconsideration relating only to Plaintiffs’ other 20 claims; preparing unsuccessful strategic motions to disqualify Michigan Supreme Court Justices; preparing a petition for costs that was not filed; preparing for the possibility of an argument *561 before the Supreme Court that was never scheduled; and expending time on other Headlee matters. (Defendants’ Exhibit B.) Therefore, Plaintiffs shall remove from their database of hours expended the following, per the revised Defendants’ Exhibit B:
All hours related to possible motion for reconsideration of 2004 MSC decision (Defendants’ Exhibit B, p. 1)
All hours related to motion to disqualify MSC Justices (Id, pp. 2-4)
All hours related to possible motion for reconsideration * re: recusal motion (Id, p. 5)
Other duplicative or unrelated time as set forth below from Defendants’ Exhibit B, p 8:
11/09/07 broadcast email entry — reduce hours expended by Va
11/12/07 broadcast email entry — reduce hours expended by Va
11/13/07 broadcast email entry — reduce hours expended by Va
02/29/08 fee petition — reduce hours expended to 0
03/07/08 fee petition — reduce hours expended to 0
08/20/08 fee petition — reduce hours expended to 0
08/22/08 fee petition —• reduce hours expended to 0
09/22/08 — 10/15/09 all 7 entries in this time frame — reduce hours expended to 0.
Plaintiffs do not need to remove their attorney time for working with putative expert Sneed in that, while Sneed did not testify at trial, she did provide a significant benefit to Plaintiffs by way of a stipulation that negated Defendants’ position that the record keeping was required by state law rather than by the federal [No Child Left Behind] legislation.[5]
*562 During Phase II, Plaintiffs’ counsel also spent an unreasonable number of hours performing other tasks on the case. Especially given Mr. Pollard’s and Mr. Kroopnick’s vast experience in Headlee Amendment matters, a review of their hours expended spreadsheet demonstrates that the attorneys spent an unreasonable number of hours briefing, preparing for oral argument and performing other tasks. (Defendants’ Exhibit C.) Plaintiffs have not sustained their burden of proving the Phase II hours expended by Messrs. Pollard and Kroopnick that have been challenged by Defendants in Defendants’ Exhibit C are objectively reasonable. Those Phase II hours on Defendant’s Exhibit C therefore shall be reduced by 20 percent, and Plaintiffs’ database of hours expended reduced accordingly. This will result in a reduction in Mr. Pollard’s 834.6 challenged hours of 166.92 hours and in Mr. Kroopnick’s 731.6 challenged hours of 146.32 hours. [Transcript citation omitted]
We adopt these findings of the special master as our own. As we observed in our opinion on third remand, the motion for reconsideration of our Supreme Court’s first decision, the motion to disqualify two justices of our Supreme Court, and the motion for reconsideration of the decision of the justices not to recuse themselves were not reasonable and necessary to the maintenance of the recordkeeping claim. Adair, 298 Mich App at 403. Consequently, the hours expended by plaintiffs’ attorneys on those motions are not compensable. For this same reason, the hours expended in preparation for possible oral argument before the Supreme Court that was never scheduled are not compensable. Likewise, the hours spent by plaintiffs’ attorneys in preparation of a petition for costs that was never filed are unreasonable and not compensable. The hours devoted by plaintiffs’ attorneys to composing certain “broadcast emails” used by plaintiffs’ attorneys to update plaintiffs are unreasonable. Pollard candidly admitted that the November 2007 broadcast e-mails included a “history of the Head- *563 lee Amendment cases” and a discussion of Owczarek v Michigan, 276 Mich App 602; 742 NW2d 380 (2007), a decision Pollard acknowledged had no relevance to a determination of the merits of the recordkeeping claim. Finally, our review of the hours expended by plaintiffs’ attorneys in conjunction with briefing, preparing for oral arguments, and other related matters leads us to conclude that the number of hours billed is not commensurate with the amount of work performed, especially in light of the years of experience possessed by plaintiffs’ attorneys and the inability of Pollard to justify the hours expended by identifying with any degree of specificity what activities had been performed.
FEE ENHANCEMENT
The special master declined to adjust upward the baseline hourly rate he assigned to Pollard and Kroop-nick. We likewise decline to do so.
We acknowledge that these proceedings involved complex issues of first impression and required extensive presentation and preparation. We also acknowledge that plaintiffs’ attorneys obtained a favorable result for plaintiffs on their recordkeeping claim that resulted in legislative appropriations of tens of millions of dollars. However, it must be observed that plaintiffs only prevailed on 1 of the 21 claims pleaded in their complaint. Moreover, although plaintiffs’ attorneys have represented school districts for decades in Headlee enforcement actions, we find this long-term attorney-client relationship to be a double-edged sword. We find none of the expected efficiencies that should have been generated by the length of this attorney-client relationship present in this case. See Augustine, 292 Mich App at 437-438. Indeed, as observed by the special master, a review of plaintiffs’ “hours expended spreadsheet dem *564 onstrates that the attorneys spent an unreasonable number of hours briefing, preparing for oral argument and performing other tasks,” which needlessly extended the time this matter spent before both of the special masters involved in the phase II litigation and this Court. Additionally, on both remands to the special masters, plaintiffs failed to act with all deliberate dispatch to ensure an expeditious resolution of those proceedings. Finally, plaintiff school districts have paid the costs of this proceeding and an attorney fee based on an hourly rate less than the baseline hourly rate we set in this opinion. Our balancing of these fee-consideration factors leads us to conclude that an award of enhanced fees in this case would be directly contrary to the admonition in Smith that the analytical framework it created “is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls,” Smith, 481 Mich at 528 (opinion of TAYLOR, C.J.), and the intent of those who ratified the Headlee Amendment that the costs awarded under Const 1963, art 9, § 32 are to be in an amount sufficient to provide the average taxpayer with the financial wherewithal to exercise the taxpayer’s right to bring suit, Durant v Dep’t of Ed (On Second Remand), 186 Mich App 83, 118; 463 NW2d 461 (1990).
Likewise, on the record before us, we conclude that the special master correctly declined to make an upward adjustment to the baseline hourly rate of plaintiffs’ remaining attorneys. None of those attorneys testified before the special master. Neither Pollard nor Kroopnick testified in any detail about the contributions made by these attorneys to the successful prosecution of the case. We have reviewed plaintiffs’ exhibits detailing the qualifications and experience of each attorney and, after consideration of the factors enumerated in MRPC 1.5(a) and Wood and the limited record, *565 we conclude that plaintiffs have failed to present proofs sufficient to justify an upward adjustment of the respective hourly rates of Schindler, Villaire, Drake, and Costanza.
CONCLUSION
Plaintiffs shall submit an amended statement of attorney fees that conforms to our opinion. An order awarding attorneys in the revised amount will thereafter enter. We retain jurisdiction.
SAAD and FORT HOOD, JJ., concurred with TALBOT, EJ.

 Const 1963, art 9, §§ 25 to 34.

 Pollard testified before the special master that the costs were hilled to and paid hy plaintiff school districts.

 These reports are available at <http://www.michbar.org/opinions/ content.cfin>.

 We do not calculate a reasonable hourly rate for attorneys Hampton and Roberts because plaintiffs incurred their fees in phase III of these proceedings. Plaintiffs also sought a reasonable attorney fee for Sidney Klinger and sin attorney identified only by the surname Zaremba. However, plaintiffs failed to present evidence from which a market rate for their respective services could be reasonably determined. Consequently, we disallow any recovery for the work performed by these attorneys.

 The special master’s representation to the contrary notwithstanding, defendants asserted that the recordkeeping requirements were imposed on the state by the No Child Left Behind Act, PL 107-110,115 State 1425.