# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANTONIO MARTEZ LIVINGSTON,

       Defendant-Appellant.

UNPUBLISHED
December 4, 2014

No. 315611
Kalamazoo Circuit Court
LC No. 2012-001229-FC

Before: FITZGERALD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant Antonio Martez Livingston appeals as of right his convictions for assault with intent to rob and steal while armed, MCL 750.89; first-degree home invasion, MCL 750.110(a)(2); and first-degree murder, the latter of which the jury found was supported by two theories: first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.316(1)(b). Defendant was sentenced to 20 to 50 years' imprisonment for his assault with intent to rob and steal while armed conviction, 10 to 20 years' imprisonment for his first-degree home invasion conviction, and life in prison for his first-degree murder conviction. On appeal, defendant argues that the trial court erred in denying his motion to suppress because he was not given his *Miranda*[1] warnings and his statements were not made voluntarily. We disagree and affirm.

The issue whether defendant was in custody and, therefore, entitled to *Miranda* warnings is preserved on appeal because defendant filed a pretrial motion to suppress the challenged evidence. *People v Gentner, Inc*, 262 Mich App 363, 368-369; 686 NW2d 752 (2004).

"The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after de novo review of the record." *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997) (citation omitted). "This is so because an 'in-custody' determination calls for application of the controlling legal standard to the historical facts." *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). This Court reviews a trial court's factual findings

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-1-

for clear error. *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Coomer*, 245 Mich App at 219. "Whether a court applied the correct constitutional standard is reviewed de novo." *Elliott*, 494 Mich at 301.

A criminal defendant has a right against self-incrimination under both the federal and Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 17; *People v White*, 493 Mich 187, 193; 828 NW2d 329 (2013). However, "[i]t is well settled that *Miranda* warnings need only be given when a person is subject to custodial interrogation." *People v Jones*, 301 Mich App 566, 580; 837 NW2d 7 (2013). "Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). Further, a "custodial interrogation" is one in a "police-dominated atmosphere" that is said to "generate 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' " *Elliott*, 494 Mich at 305, quoting *Illinois v Perkins*, 496 US 292, 296; 110 S Ct 2394; 110 L Ed 2d 243 (1990). Specifically,

> "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of "the objective circumstances of the interrogation," a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." And in order to determine how a suspect would have "gauge[d]" his "freedom of movement," courts must examine "all of the circumstances surrounding the interrogation." Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning. [*Elliott*, 494 Mich at 307, quoting *Howes v Fields*, 565 US ___, ___; 132 S Ct 1181, 1189-1190; 182 L Ed 2d 17 (2012) (citations omitted).]

In sum, "[w]hether a defendant is in custody for purposes of *Miranda* at the time of an interrogation is determined by looking at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he or she was free to leave." *Jones*, 301 Mich App at 580.

It is undisputed that defendant was subject to an interrogation. Specifically, defendant accompanied detectives to the police station for the express purpose of an interview and, thereafter, was subject to questioning initiated by law enforcement officers. See *People v Zahn*, 234 Mich App 438, 450; 594 NW2d 120 (1999). Thus, our inquiry becomes whether defendant was in "custody." Applying the controlling legal standard to the facts, we conclude that defendant was not in custody for *Miranda* purposes. Detectives approached defendant in the middle of the day, informed defendant that he was not under arrest, and asked him if he would be willing to accompany them to the police station for questioning. Defendant voluntarily agreed to accompany the detectives and the detectives thanked him several times for his willing cooperation. Defendant rode in the front seat of an unmarked vehicle to the station, which was only about four blocks away. Once at the station, defendant accompanied the detectives into the

station through the public parking lot and entrance. The record does not indicate that he was ever handcuffed or otherwise restrained during the interview. In fact, although defendant was occasionally asked to sit down for security reasons, he was also permitted to stand, stretch, and reenact events related to the incident—including placing one of the detectives in a headlock. Defendant was also offered several bathroom breaks, and, at the beginning of the interview, was told that detectives would drive him home after the interview was completed. Further, only two detectives were present during the interview and there is no indication that weapons were ever drawn or displayed. Additionally, when defendant asked the detectives what was "holding" him there, they replied, "Nothing." The circumstances did not rise to the level of creating an environment where a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave," *Elliott*, 494 Mich at 307, and so did not create the deprivation of freedom necessary to find that defendant was in "custody" for *Miranda* purposes. *Jones*, 301 Mich App at 580.

Next, defendant asserts we should find that his statements made during the interview were not voluntary. A statement or confession is voluntary when, "considering the totality of all the surrounding circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired . . . .'" *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012), quoting *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). In determining whether a defendant's statement was voluntary, the trial court should consider the totality of the circumstances including:

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Cipriano*, 431 Mich at 334.]

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness." *Id*. "The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id.*

On this record, we find defendant's argument that his statements were not given voluntarily to be without merit. With regard to the *Cipriano* factors relevant to this case, although defendant was subject to a lengthy period of questioning, was only 21 years of age, and only finished the tenth grade, there was no indication that defendant had less than average intelligence and defendant had previous experience with officers in Indiana. Defendant was not physically abused and detectives testified that they offered defendant food, water, gum, cigarettes, and bathroom breaks during the interview. See *Ryan*, 295 Mich App at 398 (finding a statement voluntary where, in part, "[p]olice officers testified that they offered defendant food,

drink, cigarettes, and regular bathroom breaks"). Defendant declined the bathroom breaks and, at the end of the interview, said that he was not tired. Defendant did not appear to be intoxicated or under the influence of any substances. Moreover, although defendant was not given his *Miranda* rights until long into the interview, he thereafter waived his rights and continued to speak with detectives.

Defendant's claim of involuntariness is predicated on his lack of education and the assertion that the detectives played on defendant's emotions to elicit a confession. However, there is no indication on the record that defendant's emotions affected his mental state in such a manner to render his confession involuntary. Moreover, even accepting defendant's allegations that detectives raised their voices or misrepresented the level of collected evidence, these behaviors do not constitute "pressures which may sap or sustain the suspect's powers of resistance or self-control." *People v Hicks*, 185 Mich App 107, 112; 460 NW2d 569 (1990). Accordingly, we conclude that "[d]efendant's will was not overborne, nor was his capacity for self-determination critically impaired." *Ryan*, 295 Mich App at 398. Thus, reversal is not warranted. *Id.*[2]

Affirmed.

/s/ E. Thomas Fitzgerald
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[2] This Court recently affirmed the murder conviction of co-defendant John Aguilar who was tried separately and alleged to have acted in concert with defendant in committing the subject murder. *People v Aguilar*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2014 (Docket No. 317215). During Aguilar's trial, defendant gave sworn testimony in which he confessed to the murder.