*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

V

JUSTIN DOUGLAS SMUTZ,

       Defendant-Appellant.

UNPUBLISHED
June 25, 2020

No. 346561
Muskegon Circuit Court
LC No. 16-002949-FC

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321, and second-degree child abuse, MCL 750.136b(3). The trial court sentenced defendant to concurrent sentences of 8 to 22½ years' imprisonment for the involuntary manslaughter conviction, and two to six years' imprisonment for the second-degree child abuse conviction. We affirm.

## I. BACKGROUND

The unfortunate facts of this case are simple but tragic. Defendant's 14-month-old child (the victim) drowned while in a bathtub. According to testimony at trial, defendant placed his 14-month-old and two-year-old children in the bathtub together after filling it with water. After placing the children in the bathtub, defendant decided to go downstairs and outside to his car in search of cigarettes. Although unclear how long defendant was outside, it was anywhere from two to six minutes, maybe longer. Nonetheless, defendant went back inside his house and proceeded upstairs. Testimony indicated that defendant stopped in the bedroom, which was across the hallway from the bathroom where the children were in the bathtub, to speak with his eight-year-old child, who was playing video games.[1]

---

[1] There was contradicting testimony about whether defendant asked his eight-year-old child to watch the younger children in the bathroom.

It was after speaking with the eight-year-old child in the bedroom that defendant noticed the victim in the bathroom submerged in water. Defendant rushed to the bathroom, grabbed the victim, and attempted CPR to no avail. Defendant called the police. Detective Clay Orrison of the Muskegon Police Department testified that he interviewed defendant at the scene. This interview was recorded, and roughly 17 minutes of it was played for the jury without objection. The jury convicted defendant of involuntary manslaughter and second-degree child abuse. The trial court sentenced defendant as we noted above. This appeal follows.

## II. DISCUSSION

On appeal, defendant argues that he received ineffective assistance of counsel, there was insufficient evidence to sustain his convictions, the trial court erroneously denied his motion to dismiss, and the scoring of offense variable (OV) 9 was erroneous. We disagree.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for failing to object to the admission of the recorded interview because the statements defendant made were in violation of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). We disagree.

Whether a defendant received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). This Court reviews findings of facts for clear error and questions of law de novo. *Id*. When the trial court does not hold an evidentiary hearing or the defendant did not move for a new trial, the defendant's claim of ineffective assistance of counsel is not preserved, and the reviewing court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

We address, first, the threshold question of whether there was a *Miranda* violation. Both the federal and state Constitutions guarantee a person's right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. To protect such right, law enforcement officers must advise a defendant of his constitutional rights if the defendant is subject to a custodial interrogation. *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018). "Statements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *Id*. at 561-562. "*Miranda* warnings are necessary only when the accused is interrogated while in custody, not simply when he is the focus of an investigation." *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001). When a defendant is not given his *Miranda* rights, the underlying issue is whether the defendant was subject to a "custodial interrogation." See *id*. at 395-397.

> *Miranda* warnings are not required unless the accused is subject to a custodial interrogation. Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Whether an accused was in custody depends on the totality of the circumstances. The key question is whether the accused could have reasonably believed that he or

she was not free to leave. [*People v Steele*, 292 Mich App 308, 316-317; 806 NW2d 753 (2011) (citations omitted).]

"[A] police officer may ask general on-the-scene questions to investigate the facts surrounding the crime without implicating the holding in *Miranda*." *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002).

In this case, we find that defendant was not subject to a custodial interrogation. It is undisputed that, during the recorded interview, police never gave defendant his *Miranda* warnings. The interview took place at defendant's residence and started with Detective Orrison gathering background information before moving into questions about what happened. "[I]nterrogation in a suspect's home is usually viewed as noncustodial." *People v Coomer*, 245 Mich App 206, 220; 627 NW2d 612 (2001) (quotation marks and citation omitted). During the recorded interview, it is also evident that the police never informed defendant that he was under arrest. Police informed defendant, specifically with regard to "rights and all that stuff," that defendant "was not in custody, you're in your own home, you're not handcuffed, okay, you consented to the search here, right?" Up to this point, the statements defendant challenges on appeal were already made. We find that, under the totality of the circumstances, defendant was not subject to a custodial interrogation because the interrogation occurred in defendant's home and a reasonable person in defendant's position would have believed that he was free to leave. See *People v Jones*, 301 Mich App 566, 580; 837 NW2d 7 (2013) (holding that a defendant who was not handcuffed and informed that she was not under arrest did not violate *Miranda*).[2] Accordingly, defense counsel was not ineffective for failing to make a meritless objection to the admission of the recorded interview. *People v Putnam*, 390 Mich App 240, 245; 870 NW2d 593 (2015). Thus, defendant has failed to establish his claim of ineffective assistance of counsel.

## B. SUFFICIENCY OF THE EVIDENCE AND MOTION TO DISMISS

Defendant next argues that there was insufficient evidence to sustain his convictions of involuntary manslaughter and second-degree child abuse. Defendant also argues that the trial court abused its discretion when it denied his motion to dismiss the second-degree child abuse charge before trial. We disagree. Because defendant's arguments involve the same legal issues, we address them together in turn.

We review a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). We also review "a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). "An abuse of discretion occurs when the court

---

[2] Defendant wanted the *entire* interview played for the jury. He cannot fault defense counsel for not objecting to the admission of the evidence when he desired admission in its entirety, then turnaround on appeal and fault defense counsel for not doing the very thing defendant wanted. See *People v Buie*, 491 Mich 294, 312; 817 NW2d 33 (2012) (a defendant is not permitted to "harbor error as an appellate parachute").

chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 211; 816 NW2d 436 (2011).

"Involuntary manslaughter is a catch-all crime that encompasses all homicides that do not constitute murder, voluntary manslaughter, or a justified or excused homicide." *Head*, 323 Mich App at 532. This crime "is established if the defendant acts in a grossly negligent, wanton, or reckless manner, causing the death of another." *People v Moseler*, 202 Mich App 296, 298; 508 NW2d 192 (1993). Gross negligence under an involuntary manslaughter charge requires the prosecution to establish:

> (1) defendant's knowledge of a situation requiring the use of ordinary care and diligence to avert injury to another, (2) her ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) her failure to use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v Albers*, 258 Mich App 578, 582; 672 NW2d 336 (2003).]

In this case, there was sufficient evidence of gross negligence. Contrary to defendant's position, a rational trier of fact could find that defendant acted with gross negligence in drawing a bath, placing his almost 14-month-old and two-year-old children in said bath, and leaving those children unattended. Defendant knew that this type of situation required the exercise of ordinary care and diligence to avert injury or death because defendant admitted that he knew there was a risk that the children could drown if left unattended. It goes without saying that unsupervised, young children in a bathtub full of water poses a danger of drowning. Defendant had the ability to avoid the harm by exercising ordinary care and diligence. He could have remained with the children during their baths and simply retrieved the cigarettes after they were safely removed from the bathtub. By ignoring the risk that his children could drown, defendant failed to use the requisite care and diligence. He also failed to avert the threatened danger when it was apparent that the result was likely to prove disastrous to his children. See, e.g., *Head*, 323 Mich App at 533-534. Therefore, there was sufficient evidence of gross negligence of which the jury could convict defendant of involuntary manslaughter.

Moreover, there was sufficient evidence upon which a rational jury could find beyond a reasonable doubt that defendant committed a "reckless act" under MCL 750.136b(3), which states in relevant part:

> A person is guilty of child abuse in the second degree if any of the following apply:

> (a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

We have stated:

> To establish second-degree child abuse based on a reckless act, the prosecution must prove (1) that the defendant was a parent or a guardian of the child or had care

-4-

or custody of or authority over the child, (2) that the defendant committed a reckless act, (3) that, as a result, the child suffered serious physical harm, and (4) that the child was under 18 years old at the time. [*People v Murphy*, 321 Mich App 355, 360; 910 NW2d 374 (2017).]

Defendant only challenges the second element, that he committed a reckless act.

Defendant argues that this case is similar to *Murphy*. There, the prosecution presented evidence that an 11-month-old child "died after ingesting a toxic quantity of morphine." *Id*. at 357. Similar to this case, the prosecution in *Murphy* used a "reckless act" theory to contend that the child's parents were reckless because of "their inaction." *Id*. at 358. Specifically, the prosecution presented evidence "that the home was in a deplorable and filthy condition, that there were prescription morphine pills in the home, and that [the child's] parents had failed to clean the home to ensure that the morphine pills were removed . . . ." *Id*. This Court stated that, "in order to constitute a 'reckless act' under the statute, the defendant must do something and do it recklessly. Simply failing to take an action does not constitute an act." *Id*. at 361. Ultimately, this Court held that the prosecution presented no evidence of a reckless act that caused the child to suffer serious physical harm. *Id*. It was the parent's inaction, i.e., "her failure to clean her house to ensure that morphine pills were not in [the child's] reach," that led the *Murphy* Court to its decision. *Id*.

In this case, defendant did not simply fail to act; instead, he created the very risk that led to the victim's death. Defendant committed reckless acts by drawing a bath, placing his almost 14-month-old and two-year-old in the bathtub, and then leaving the bathroom where his children remained unsupervised. Unlike the defendant in *Murphy*, defendant took affirmative acts to draw the bath, undress the children, place the children in the bathtub, and then leave the children unattended. Moreover, defendant knowingly committed these acts, knowing that it was likely to cause serious physical harm to the children because he admitted that there was a risk that the children could drown if left unattended. Yet, defendant chose to ignore such risk. Defendant affirmatively left his children in a bathtub full of water, well-aware of the risk, unlike the parent in *Murphy* who decided not to clean, which was not an affirmative act in and of itself. See, e.g., *Head*, 323 Mich App at 536 (finding that the defendant not only failed to act by not supervising his children while they played in defendant's bedroom, but also that the defendant committed an affirmative act by storing "a loaded, illegal, short-barreled shotgun in a readily accessible location where he allowed his young children to play while unsupervised."). Accordingly, we find that there was sufficient evidence presented to prove beyond a reasonable doubt that defendant committed a reckless act. For the same reasons, the trial court's decision to deny his motion to dismiss did not fall outside the range of reasonable and principled outcomes. See *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015).

## C. OV 9

Lastly, defendant argues that the trial court erred when it assessed 10 points for OV 9. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494

Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. "A decision is clearly erroneous if, although there is evidence to support it, the Court is left with a definite and firm conviction that a mistake has been made." *People v Chambers*, 195 Mich App 118, 121; 489 NW2d 168 (1992).

OV 9 relates to the number of victims. MCL 777.39(1). A trial court must assess 10 points when two to nine victims " 'were placed in danger of physical injury or death . . . .' " *People v Fawaz*, 299 Mich App 55, 62; 829 NW2d 259 (2012), quoting MCL 777.39(1)(c). An assessment of zero points is necessary when fewer than two victims were placed in danger of physical injury or death. MCL 777.39(1)(d). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013).

In this case, defendant was the only adult in the home at the time of the victim's drowning. Both the victim and the two-year-old were placed in the bathtub together before defendant left the bathroom. The victim drowned while unattended, which created the very same danger of physical injury or death to the two-year-old by virtue of his age. This danger existed at the very moment defendant left the bathroom. We are not left with a definite and firm conviction that the trial court erred because there was evidence to support the trial court's finding that defendant placed two victims in danger of physical injury or death.[3]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter

---

[3] Defendant also appears to challenge the proportionality of his sentence. However, we need not address this issue because his minimum sentencing guidelines range will not change as a result of our holding. Accordingly, defendant was sentenced within his minimum sentencing guidelines range, and we must affirm such sentence. See MCL 769.34(10); *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016) ("When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information.").