*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 18, 2026
9:55 AM

Plaintiff-Appellee,

v

No. 373561
Macomb Circuit Court
LC No. 2023-002752-FH

REGGIE WAYNE EASON, JR.,

Defendant-Appellant.

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

Defendant, Reggie Wayne Eason, Jr., was a passenger in a vehicle that was stopped by the police. A loaded firearm was found in the backseat of the vehicle. Although officers twice conducted a pat-down search of Eason and did not recover anything, a corrections officer at the jail where Eason was transported recovered a bullet in his pocket that matched the bullets recovered from the firearm. A jury convicted Eason of carrying a pistol in a vehicle without a concealed pistol license, MCL 750.227(2); felon in possession of a firearm, MCL 750.224f; felon in possession of ammunition, MCL 750.224f(6); and two counts of possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b. On appeal, Eason challenges the failure of the police and prosecutor to preserve body-camera footage of the traffic stop and to conduct DNA and fingerprint testing of the firearm. He also contends that he was entitled to an adverse-inference jury instruction as a result of the "missing" evidence and that the evidence presented at trial was insufficient to support his convictions. We disagree with Eason's arguments and affirm.

## I. FACTUAL BACKGROUND

While on patrol at 5:19 a.m. on June 25, 2023, Sterling Heights Police Officer Justin Porter observed a Chevy Malibu parked in the middle of an intersection facing opposite of the direction of travel. As he approached the vehicle, Porter noticed that the window tint of the front driver and passenger windows was unlawfully dark. He followed the Malibu and observed it make a right turn at an intersection without stopping at a red light. The vehicle then continued traveling approximately 20 miles per hour over the speed limit.

-1-

Porter stopped the vehicle and approached the driver's side. He spoke with Jeniya McWilliams, the driver of the vehicle. She identified Eason, who was in the front passenger seat, as her cousin. As Porter spoke to McWilliams, Eason interjected, stating they did not have anything in the vehicle, and he did not have anything on him. Porter saw Eason "grabbing" near his waistband and adjusting his clothing. Porter looked around inside the vehicle and saw a black pistol lying on top of the backseat in the middle of the seat. He immediately called for backup.

After Sterling Heights Police Officers Nicholas Bruno and Jack Currie arrived at the scene, Porter asked McWilliams to step out of the vehicle. Bruno assisted Porter in searching McWilliams. She was arrested for operating a vehicle while intoxicated and placed in the back of Porter's patrol car. Porter and Bruno then approached the passenger side of the Malibu and asked Eason to get out of the vehicle. Bruno and Currie together searched Eason, each officer simultaneously patting down one side of him. Neither officer recovered anything from Eason, who was then handcuffed and placed in the back of Bruno's patrol car. Thereafter, Porter retrieved the pistol from the back seat of the Malibu. The firearm was a Glock 23 semiautomatic pistol with a magazine containing 12 rounds, or bullets. One bullet was also in the chamber. Porter removed the magazine and the bullet in the chamber from the firearm and secured the firearm in his patrol car.

Officers Bruno and Currie transported Eason to the Macomb County Jail. After they arrived, Bruno again searched Eason in the garage booking area before turning him over to the custody of the jail officers. Again, Bruno did not recover anything from Eason. A video depicting the search in the booking area was played for the jury. Bruno and Currie transferred custody of Eason over to Corrections Officer Lawrence Duda, who conducted a pat-down search of Eason and recovered a bullet and some coins in the right, front pocket of Eason's shorts. Videos of the search taken via a hallway camera and Duda's body camera were played for the jury. A video of Duda handing the bullet to Porter was also played for the jury. As Duda gave the bullet to Porter, he stated, "[Y]ou can have that back."[1]

Porter ran the serial number of the firearm recovered from the Malibu through the LEIN system to determine whether it was stolen or registered to anyone and discovered that it was unregistered. He also checked the LEIN system to determine whether McWilliams or Eason had a valid concealed-carry license and discovered that neither did. In addition, Porter became aware that Eason was a convicted felon, and McWilliams did not have a valid driver's license. Although the magazine that was removed from the firearm could hold 13 bullets, only 12 bullets were in the magazine. Porter compared the bullet found in Eason's pocket with the bullets in the firearm and magazine and discovered that all the bullets were the same caliber and make and had the same color casing.

The only witness to testify on Eason's behalf was Sterling Heights Detective Natalie Abram, the officer in charge. She testified that although the firearm was swabbed for DNA, she did not order testing of the swab. She asserted that the two DNA-testing laboratories that the

---

[1] None of the videos played during trial were filed with this Court, but the transcript indicates that Duda stated, "[Y]ou can have that back" as he handed the bullet to Porter.

Sterling Heights Police Department used[2] would not accept "certain things" because of the laboratories' backlogs and would accept and test items only in connection with more serious offenses. Abram also testified that no fingerprints were found on the firearm.

When asked whether all officers in the department wore body cameras, Abram responded, "[Y]es, for the most part." She testified that officers are now required to wear body cameras on road patrol. She could not recall when that policy went into effect, but stated, "It hasn't been too long." She asserted that body-camera footage is downloaded to a server after an officer's shift and saved on the server for 90 days. Because of limited space on the server, footage is purged from the system after 90 days unless someone requests the footage. Although the prosecution requested the body-camera footage of the traffic stop before Eason's preliminary examination, the request was made more than 90 days after the traffic stop and could not be provided. Because the jail has a longer retention period for body-camera footage, Abram was able to obtain the footage from Duda's body camera that was played during trial.

At trial, Eason stipulated that he was previously convicted of a specified felony, and his right to possess a firearm had not been restored. His theory of defense was that Porter knew he had a criminal record and that it would be difficult to connect him with the gun in the backseat of the Malibu. Defense counsel argued during closing argument that Porter "thought it wouldn't hurt for one of the bullets [recovered from the gun] to not be in evidence but to be in [Eason's] pocket." Counsel pointed out that Porter initially testified that the gun "was fully-loaded," but then claimed that only 13, rather than 14, bullets were recovered from the magazine and gun, "and one mysteriously ended up in Mr. Eason's pocket." Counsel argued it did not make sense for Eason to keep a bullet in his pocket, Bruno and Currie twice searched Eason and did not recover the bullet, the officers' body-camera footage was never provided, and Duda gave the bullet to Porter, stating that Porter could have it "back."

The jury convicted Eason as charged. This appeal followed.

## II. DUE PROCESS CHALLENGE

Eason first argues that he was denied his constitutional right to due process because the police failed to investigate the case through DNA and fingerprint evidence and failed to retain the police officers' body-camera footage of the traffic stop and Eason's arrest. Eason failed to preserve his argument for this Court's review when he did not raise it in the trial court. See *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021) ("To preserve an issue, a party must raise it before the trial court."). We review unpreserved constitutional issues for plain error affecting the defendant's substantial rights. *Id*. at 564. Under the plain-error rule, the defendant must establish that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness,

---

[2] According to Detective Abram, the Sterling Heights Police Department primarily used the Michigan State Police Forensic Laboratory and the Oakland County Laboratory for DNA testing.

integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted).

The failure of the police to preserve potentially useful evidence violates a criminal defendant's right to due process only when the defendant can establish bad faith on the part of the law-enforcement officers. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012). "A prosecutor is not required to seek and find exculpatory evidence or assist in building the defendant's case, and a prosecutor is not required to negate every theory consistent with defendant's innocence." *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017) (quotation marks and citation omitted). "Further, unless the defendant can show the suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to perform DNA testing to satisfy due process." *Id*.

Eason contends that the police and prosecutors knew that the body-camera footage would be destroyed after 90 days, but they delayed their investigation, resulting in the destruction of potentially exculpatory evidence. He asserts the mandatory use of body cameras is circumvented if the prosecution fails to request the footage within 90 days. Eason fails to establish plain error. He appears to argue that the police and prosecutors intentionally delayed investigating and prosecuting this case, knowing that the body-camera footage would be purged from the server after 90 days. The record belies that argument. Detective Abram testified that the assistant prosecutor who handled Eason's preliminary examination requested the body-camera footage, but the request was made more than 90 days after Eason's arrest. The request for the footage demonstrates that the assistant prosecutor was unaware that the footage was deleted from the system after 90 days. Therefore, Eason has failed to establish bad faith on the part of the police or the prosecution. Moreover, Abram testified that a defendant, as well as the prosecutor, may request body-camera footage. The record thus shows that Eason himself could have requested the footage, but he failed to do so.

Further, this Court has held that the destruction of evidence in accordance with department policy does not establish bad faith. In *People v Johnson*, 197 Mich App 362, 364; 494 NW2d 873 (1992), the defendant requested audio recordings of police radio traffic regarding his arrest. This Court determined that "the routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal." *Id*. at 365. In *People v Jones*, 301 Mich App 566, 580; 837 NW2d 7 (2013), the defendant argued that a due-process violation occurred requiring the dismissal of the charges against her because the police destroyed a recording of her roadside traffic stop. This Court rejected the defendant's argument on the basis that all traffic-stop recordings were automatically deleted six months after the traffic stop, and the defendant failed to present any evidence that the police acted in bad faith or that the recording would have been exculpatory. *Id*. at 581. Similarly, in the instant case, the routine destruction of the body-camera footage in accordance with department policy did not constitute a due-process violation.

Eason also argues that his constitutional right to due process was violated because the police failed to conduct a complete investigation that included an examination of DNA and fingerprint evidence. Abram testified that the gun was swabbed for DNA evidence, but the swab

was not tested because of the backlog at the DNA laboratories. She asserted that the laboratories would not accept "certain things" for testing because of the backlog. Therefore, the record shows that the police sought to have the gun tested for DNA evidence, but were unable to do so. Moreover, "unless the defendant can show the suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to perform DNA testing to satisfy due process." *Dickinson*, 321 Mich App at 16. The record fails to establish bad faith, misconduct, or the suppression of evidence.

Regarding fingerprint evidence, Eason contends that Abram testified that "no fingerprint evidence was sought." On the contrary, Abram testified as follows:

> *Q*. Okay. And so you didn't have fingerprints found on the gun, either?
>
> *A*. No.

Therefore, it appears that the gun was tested for fingerprint evidence, but no fingerprints were recovered. In any event, the police were not required to the test the gun for fingerprints absent intentional misconduct, bad faith, or the suppression of evidence, which the record fails to establish. See *People v Green*, 310 Mich App 249, 255; 871 NW2d 888 (2015). Absent such a showing, "the prosecutor and the police are not required to test evidence to accord a defendant due process." *Id*. (quotation marks and citation omitted). "Whether or not to run fingerprint tests is a legitimate police investigative decision." *People v Stephens*, 58 Mich App 701, 706; 228 NW2d 527 (1975). Although the prosecution "is required to disclose evidence that has been developed, it is not required to develop evidence . . . that defendant hopes will provide him with a defense." *Green*, 310 Mich App at 256. Accordingly, Eason has failed to establish that any plain error occurred.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Eason argues that his trial attorney rendered ineffective assistance of counsel by failing to request an adverse-inference jury instruction regarding the "missing" body-camera, DNA, and fingerprint evidence. Eason preserved his argument for our review by moving to remand this case to the trial court for a *Ginther*[3] hearing. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Because this Court denied his motion, our review is limited to errors apparent on the record. *Id*.

A claim alleging ineffective assistance of counsel presents "a mixed question of fact and constitutional law." *Id*. (quotation marks and citation omitted). We review for clear error the trial court's findings of fact, if any, and review de novo "the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). To obtain a new trial on the basis of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

A defendant is entitled to a properly instructed jury. *People v Flores*, 346 Mich App 602, 612; 13 NW3d 668 (2023). An adverse-inference instruction allows the jury to infer that material evidence the prosecution fails to preserve for trial would have favored the defendant. *People v Davis*, 199 Mich App 502, 514-515; 503 NW2d 457 (1993), overruled in part on other grounds *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012). Such an instruction is appropriate, however, only if the prosecutor acted in bad faith. *People v Cress*, 250 Mich App 110, 157-158; 645 NW2d 669 (2002), rev'd on other grounds 468 Mich 678 (2003). As previously discussed, no evidence indicates that the prosecutor, or the police, acted in bad faith by failing to order DNA and fingerprint testing or by failing to preserve the body-camera footage. Accordingly, Eason was not entitled to an adverse-inference instruction even if his attorney would have requested one. As such, his attorney's representation did not fall below an objective standard of reasonableness, and he was not denied the effective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## IV. SUFFICIENCY OF THE EVIDENCE

Finally, Eason argues that the evidence was insufficient to support his convictions because he was merely present in the vehicle and did not constructively possess the firearm. "We review de novo a challenge to the sufficiency of the evidence." *People v Baskerville*, 333 Mich App 276, 282; 963 NW2d 620 (2020). We view the evidence in the light most favorable to the prosecution to determine whether the trier of fact could find that the essential elements of the charged offenses were proven beyond a reasonable doubt. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). We must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Baskerville*, 333 Mich App at 282-283 (quotation marks and citation omitted). Circumstantial evidence may be sufficient to support a conviction if it facilitates reasonable inferences of causation and is not merely speculative. *Xun Wang*, 505 Mich at 251.

The prosecution charged Eason with two counts of felony-firearm, with the predicate offenses for those charges being felon in possession of a firearm and felon in possession of ammunition. The prosecution also charged Eason with carrying a pistol in a vehicle without a concealed pistol license. The possession of a firearm is an essential element of felony-firearm, *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000), felon in possession of a firearm, *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016), and carrying a pistol in a vehicle without a concealed pistol license, MCL 750.227(2). Therefore, the prosecution was required to prove that Eason possessed the firearm in order to convict him of the four firearm-related offenses.[4] Possession may be actual or constructive. *Burgenmeyer*, 461 Mich at 438. "Physical possession is not necessary as long as the defendant has constructive possession." *Id.* (quotation marks and citation omitted). "[A] defendant has constructive possession of a firearm if

---

[4] Eason does not challenge the sufficiency of the evidence to convict him of felon in possession of ammunition.

the location of the weapon is known and it is reasonably accessible to the defendant." *Id*. (quotation marks and citation omitted).

Viewed in the light most favorable to the prosecution, the evidence was sufficient for the jury to conclude that Eason constructively possessed the firearm. During the traffic stop, Eason told Porter that he and McWilliams did not have anything in the vehicle, and he did not have anything on him, but Porter observed Eason "grabbing" near his waistband and adjusting his clothing. Porter looked in the backseat and saw a pistol sitting in plain view on top of the rear seat. A magazine removed from the firearm was capable of holding 13 bullets, but only 12 bullets were in the magazine. Officer Duda found one bullet in the pocket of Eason's shorts when Duda searched Eason upon his entry to the jail. The bullet found in Eason's pocket was the same make and caliber and had the same color casing as the bullets in the magazine and chamber of the pistol. Accordingly, the evidence was sufficient for the jury to find that Eason constructively possessed the firearm.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi