# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIMBERLY ANITRA MURPHY,

Defendant-Appellant.

FOR PUBLICATION
September 19, 2017
9:05 a.m.

No. 331620
Macomb Circuit Court
LC No. 2015-000548-FH

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

M. J. KELLY, J.

Defendant, Kimberly Murphy, was convicted following a jury trial of second-degree child abuse, MCL 750.136b(3). Murphy was sentenced to 36 to 120 months' imprisonment, with 76 days of credit for jail time served. Because the jury verdict is not supported by sufficient evidence, we vacate Murphy's conviction and sentence.

## I. BASIC FACTS

This case arises from the death of Murphy's 11-month-old daughter, Trinity Murphy.[1] The prosecutor presented evidence showing that Trinity died after ingesting a toxic quantity of morphine.[2] The prosecutor's theory was that Trinity died because of her parents' "reckless acts,"

---

[1] Trinity's father, Harold Murphy, was also charged in connection with her death. He was tried jointly with Murphy, convicted of second-degree child abuse, and sentenced. He has not appealed.

[2] It is not clear where Trinity found the morphine pill. However, there was testimony that her grandmother, who had been living in the home, had been prescribed morphine for pain management. The grandmother had colon cancer and had passed away about a month before Trinity's death. Murphy admitted to a police detective that a pill could have possibly fallen on the floor in the grandmother's bedroom. The police also located a prescription pill bottle containing morphine pills in a closet in the grandmother's former bedroom, but they appeared to be out of reach of an 11-month-old child. Thus, although speculative, the prosecutor argued that a pill had likely fallen to the floor and because Trinity's parents failed to clean the bedroom Trinity was able to find and consume it.

-1-

which she contended consisted of "their inaction" and their inability to protect their child and provide a safe home environment. In support of her theory, the prosecutor presented substantial evidence showing that the home was in a deplorable and filthy condition, that there were prescription morphine pills in the home, and that Trinity's parents had failed to clean the home to ensure that the morphine pills were removed after Trinity's grandmother (who was prescribed the medication and had been living in the home) passed away. The defense theory was that no reckless act taken by Murphy caused Trinity's death.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Murphy argues that there was insufficient evidence to convict her of second-degree child abuse. We review de novo challenges to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). " 'It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences.' " *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

### B. ANALYSIS

Under MCL 750.136b(3), a person is guilty of second-degree child abuse under three circumstances:

> (a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

> (b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

> (c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

Only subsection (a) is applicable in this case. Under subsection (a), a person can be convicted of second-degree child abuse if his or her "omission causes serious physical harm or serious mental harm to a child" or if his or her "reckless act causes serious physical harm or serious mental harm to a child." MCL 750.136b(3)(a).[3] The prosecutor proceeded under a theory that Murphy

---

[3] Person is defined as "a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(d). There is no

had committed a reckless act causing serious physical harm to Trinity, not that her omission caused serious physical harm to Trinity, and that was the only theory that the jury was instructed on.[4] To establish second-degree child abuse based on a reckless act, the prosecution must prove that a defendant (1) was a parent or a guardian of the child or had care or authority over the child; (2) that he or she committed a reckless act, (3) that as a result, the child suffered serious physical harm; and (4) that the child was under 18 years old at the time. See M Crim JI 17.20. Generally, a determination of whether an act is reckless is a jury question. See *People v Edwards*, 206 Mich App 694, 696-697; 522 NW2d 727 (1994).

The question in this case, however, is not whether Murphy was "reckless."[5] Instead, it is whether she committed a "reckless *act*." The statute does not define what constitutes an "act" for purposes of MCL 750.136b(3)(a). Black's Law Dictionary (10th ed) defines "act" as "1. Something done or performed, esp. voluntarily; a deed" or "2. The process of doing or performing; an occurrence that results from a person's will being exerted on the external world." Thus, in order to constitute a "reckless act" under the statute, the defendant must do something and do it recklessly. Simply failing to take an action does not constitute an act. The prosecutor presented no evidence that any affirmative act taken by Murphy led to Trinity's death. Instead, she only directed the jury to Murphy's reckless *inaction*, i.e., her failure to clean her house to ensure that morphine pills were not in reach of Trinity.

_____

dispute in this case that Murphy qualifies as a "person" under the statute. Nor is there any dispute that she suffered serious physical harm.

[4] We note that under the facts presented to the jury, Murphy could not have been convicted of second-degree child abuse on an omission theory because the statute defines "omission" as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." MCL 750.136b(1)(c). Here, there is no evidence that Murphy willfully failed to provide food, clothing, or shelter to Trinity or that she willfully abandoned her.

[5] The concurrence takes issue with the definition of "reckless" set forth in *People v Gregg*, 206 Mich App 208; 520 NW2d 690 (1994) and the definition of "reckless" adopted by the trial court in this case. We also have serious concerns about the loose definition in *Gregg* and the definition adopted by the trial court. However, given that the issue is not outcome determinative, we decline to address it now, especially in the absence of briefing on the issue.

Because there is no evidence in the record of a reckless act taken by Murphy that caused Trinity to suffer serious physical abuse, we vacate her conviction and sentence for second-degree child abuse.[6]

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[6] Given our resolution of this issue we need not address Murphy's argument that she was completely deprived of the assistance of a lawyer during a portion of the trial or that her jail-credit was improperly calculated. Nevertheless, we are compelled to briefly discuss the ineffective assistance claim. Here, it is undisputed that for approximately 27-minutes during the trial, Murphy's lawyer was completely absent while her co-defendant's lawyer cross-examined a police detective and while the prosecutor conducted a re-direct examination of the detective. The questions asked during Murphy's lawyer's absence included questions pertaining to Murphy that were arguably inculpatory. Although the lawyer's absence likely did not amount to a complete denial of counsel so as to constitute a structural error under *United States v Cronic*, 466 US 648, 659-662; 104 S Ct 2039; 80 L Ed 2d 657 (1984), we find the court's willingness to proceed without Murphy's lawyer disturbing. A criminal defendant should not be punished for his or her lawyer's failure to timely appear for court proceedings. While the absence was undoubtedly inconvenient for the court, the jury, opposing lawyers, and the witnesses, the proposition that the presence of a lawyer in the courtroom is necessary for a party's proper defense is so fundamental that it hardly requires a citation to authority and it should not have been so lightly ignored by the trial court.