*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 10, 2020

Plaintiff-Appellant,

v

No. 350344
Wayne Circuit Court
LC No. 18-000727-02-FH

SAMANTHA RENEE EUBANKS,

Defendant-Appellee.

Before: STEPHENS, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion to quash the information and dismissing eight counts of second-degree child abuse, MCL 750.136b(3), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On appeal, plaintiff argues the trial court abused its discretion by dismissing the second-degree child abuse charges because this Court already determined there was probable cause to bind over defendant for trial on those charges when we concluded there was probable cause to bind over defendant on the felony-firearm charges. Plaintiff also argues the trial court abused its discretion by concluding defendant did not commit an "act" for purposes of MCL 750.136b(3) by allowing children to play unsupervised where loaded guns were kept unsecured. We affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

This case arises from the shooting of two three-year-old children, KD and DG, by defendant's three-year-old son, CE. Defendant, the mother of six children, was operating an

-1-

unlicensed family child care home.[1] The parents of six other children paid defendant to watch and care for their children.

At about 10:15 a.m., on Wednesday, September 27, 2017, while defendant's four older children were at school, defendant was engaged in a cell phone conversation. Defendant's twin three-year-old boys were upstairs playing unsupervised with KD and DG in defendant's bedroom. Inside the top drawer of a thirty-inch high dresser CE discovered a loaded .45 caliber Smith & Wesson handgun. CE pulled the trigger and shot DG in the shoulder, fracturing his clavicle. The bullet passed through DG and struck KD in the face, resulting in the loss of KD's right eye and necessitating facial reconstructive surgeries.

After the police arrived, they located the .45 caliber Smith & Wesson handgun on defendant's bedroom floor. It was jammed with a spent shell casing stuck in its slide. The police also observed a loaded 9-millimeter Glock 19 handgun in the open top dresser drawer from which CG had previously removed the Smith and Wesson. They secured the Glock by removing the round in the chamber along with the magazine. Additionally, the police located two empty holsters in defendant's bedroom—one on the floor and one inside a Pack 'n Play. The dresser was the only one in defendant's bedroom and defendant later told the police that her husband used one of dresser's top drawers as a junk drawer. Defendant also later told the police KD napped in defendant's bed and another child in her care slept in the Pack 'n Play.

Inside defendant's home, the police discovered four additional firearms. In the upstairs closet, located just outside defendant's bedroom, the police found a Savage bolt-action rifle and a

---

[1] MCL 722.111(p)(*iii*) provides:

> "Family child care home" means a private home in which 1 but fewer than 7 minor children are received for care and supervision for compensation for periods of less than 24 hours a day, unattended by a parent or legal guardian, except children related to an adult member of the household by blood, marriage, or adoption. Family child care home includes a home in which care is given to an unrelated minor child for more than 4 weeks during a calendar year. A family child care home does not include an individual providing babysitting services for another individual. As used in this subparagraph, "providing babysitting services" means caring for a child on behalf of the child's parent or guardian if the annual compensation for providing those services does not equal or exceed $600.00 or an amount that would according to the internal revenue code of 1986 obligate the child's parent or guardian to provide a form 1099-MISC to the individual for compensation paid during the calendar year for those services.

Below and on appeal, defendant contends that she was simply "babysitting for friends." In defendant's police interview, she admits to caring for unrelated children, being compensated for care, and planning on opening a daycare facility in the future.

Thompson muzzle-loader rifle. The police also found a locked gun safe. Although several handguns would have fit inside the safe, it contained a single Caltech 9-millimeter handgun. Defendant had a key to the gun safe on her keychain; her codefendant husband, had the other key. On the main floor, the police found a second Smith & Wesson revolver inside the linen closet. This revolver was on a shelf that was five-feet, four inches off the ground, and, thus, outside the reach of the younger children in the home. Nevertheless, the revolver was visible when the closet was opened.

In defendant's later police interview, defendant claimed she was terrified of guns, did not like them, and tried "not to know where they" were. Defendant thought her husband had three guns, not six. Defendant admitted that she recently overheard her husband tell her oldest child that there was a single loaded gun inside the locked gun safe. Defendant acknowledged that not all three of the guns she was aware of were in the safe.

Defendant also told the police that she had cautioned her husband regarding the guns because CE was so curious about them and always tried to touch the gun when her husband carried one. Defendant also cautioned CE about the weapon her husband carried, telling him it was for bad guys.

Defendant was further aware that her husband had recently had one of his guns in his work backpack. Although not one-hundred percent certain, defendant thought that perhaps her husband had put the gun in the dresser drawer. According to defendant, her husband also knew that their boys went into that drawer. Defendant was aware that, in the past, her husband had a gun in the drawer. Defendant had warned her husband about CE and had reminded her husband that he had said he would store the guns in the gun safe he had purchased for that purpose. Defendant eventually agreed that she knew certain guns inside her home were unsecured, but she did not know exactly where they were. In her written statement, defendant again admitted that she knew that not all three of the guns, that she was aware of, were in the gun safe.

Defendant told the police that, if she had known that the guns were in the drawer, she would not have let the boys play upstairs. Defendant simply would not have put the children "in danger like that."

## II. LEGAL PROCEEDINGS

Plaintiff charged defendant with 12 counts of second-degree child abuse and two counts of felony-firearm.[2] At defendant's preliminary examination, defendant opposed bindover on the

---

[2] Regarding her own children, defendant was charged with "knowingly or intentionally committing an act likely to cause serious physical harm to a child by maintaining a home environment without ensuring that her child was protected from known hazards, to wit: loaded firearms accessible to her child." Regarding the daycare children, defendant was charged with "knowingly or

-3-

child abuse charges, relying on *People v Murphy*, 321 Mich App 355; 910 NW2d 374 (2017). In *Murphy*, this Court held that in order to convict a parent of second-degree child abuse involving the parent's commission of a reckless act requires a parent to "do something and do it recklessly." *Id*. at 361. Therefore, "[s]imply failing to take an action [did not] constitute an act." Defense counsel argued that here, defendant's failure to act was not child abuse. The district court rejected defendant's argument and bound her over on eight counts of child abuse. The district court found that defendant told the police that "she knew at some point in time [that] the gun was in that drawer" and "she said . . . that her husband kept the guns in that drawer sometimes." But the district court dismissed the four counts of second-degree child abuse involving defendant's older children, who were not inside the home when the shooting occurred. The district court also dismissed the two felony-firearm counts, concluding that defendant did not have actual or constructive possession of the firearms that belonged to her husband. In particular, the district court reasoned that it had no "evidence that the gun was accessible and available to [defendant] when these crimes were committed."

In the circuit court, plaintiff moved to reinstate the two dismissed felony-firearm charges. The circuit court denied plaintiff's motion and plaintiff sought leave to appeal with this Court.

During the time that plaintiff was attempting to restore the felony-firearm charges, defendant moved to quash or reduce the remaining child abuse counts.[3] Defendant argued that her actions were not reckless because she had no knowledge that there was a loaded firearm in the dresser, she thought or assumed that the guns were in the gun safe, and she committed no act which was reckless. Defendant continued to rely on *Murphy*. In response, plaintiff argued that *Murphy* was distinguishable. In this case, plaintiff asserted that the record was clear that defendant knew two guns inside her home were unsafe and yet allowed the children in her care free rein therein sans her supervision.

In May 2018, then Wayne County Circuit Court Judge Cynthia Gray Hathaway heard and denied defendant's motion to quash the child abuse charges. Judge Hathaway explained that the evidence presented during the preliminary examination established that defendant knew there were unsecured guns in her home, that defendant allowed multiple young children inside, and that defendant allowed the children to play unsupervised, placing them in danger. Judge Hathaway

---

intentionally commit an act likely to cause serious physical harm to a child by agreeing to provide daycare and accepting the child into her home without ensuring that the child was protected from known hazards, to wit: loaded firearms accessible to children."

Codefendant was charged with six counts of second-degree child abuse by "knowingly or intentionally committing an act likely to cause serious physical harm to a child by leaving loaded firearms accessible to his child."

[3] Defendant filed identical motions and memorandums of law on April 16 and May 1, 2018.

determined that *Murphy* was distinguishable. Rather than this case being about defendant's failure to act, Judge Hathaway determined that it was about defendant's actions. In sum, Judge Hathaway decided that the magistrate had not abused his "discretion by binding this over with all of those factors at play." Finding no abuse of discretion, Judge Hathaway also declined to reduce the charges. On May 18, 2018, the circuit court entered an order denying defendant's motion to quash.

A few weeks later, this Court issued an order of preemptory reversal as to the felony-firearm charges, concluding:

> Circumstantial evidence, coupled with the reasonable inferences derived therefrom, may support a bindover. *People v Waterstone*, 296 Mich App 121, 152; 818 NW2d 432 (2012). Record evidence established that defendant was aware that her husband kept loaded handguns in the drawer of their bedroom dresser, which was only 30 inches tall and accessible to their three-year-old son. Although defendant may not have known that a specific firearm was in the drawer on the date of the shooting, she was aware that her husband had several guns and knew he did not keep all of them locked in the safe. Under the circumstances, a rational trier of fact could find beyond a reasonable doubt that defendant constructively possessed the firearm. *People v LaFountain*, 495 Mich 968; 844 NW2d 5 (2014). The trier of fact is to decide what inferences may be appropriately drawn from the evidence and the weight to be given to those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The evidence thus was sufficient to create logical inferences to show probable cause for a reasonable person to believe that firearm felonies were committed and that defendant committed those felonies. Accordingly, the district court abused its discretion in declining to bind over defendant on the firearm charges. [*People v Eubanks*, unpublished order of the Court of Appeals, entered June 8, 2018 (Docket No. 343714).]

On the same day that this Court issued this order, defendant filed an interlocutory application for leave to appeal the circuit court's denial of her motion to quash or reduce the child abuse charges. Plaintiff opted not to respond.

Defendant also moved for reconsideration of this Court's order pertaining to the felony-firearm counts. Defendant argued that this Court misapprehended the evidence presented at preliminary examination, more specifically, that this Court misconstrued defendant's statements during the police interview. This Court denied defendant's motion for reconsideration. *People v Eubanks*, unpublished order of the Court of Appeals, entered July 16, 2018 (Docket No. 343714).

On the same day, this Court also denied defendant's amended application for leave to appeal from the circuit court's order denying her motion to reduce or quash the child abuse charges for failing to persuade it of the need for immediate appellate review. *People v Eubanks*, unpublished order of the Court of Appeals, entered July 16, 2018 (Docket No. 344193).

Defendant filed applications for leave to appeal with our Supreme Court in both appeals. Thereafter, in lieu of granting defendant's application pertaining to the felony-firearm counts, our Supreme Court vacated that part of this Court's order that reversed the circuit court's order, and remanded for "reconsideration in light of *People v Anderson*, 501 Mich 175[; 912 NW2d 503] (2018)." *People v Eubanks*, 503 Mich 893; 919 NW2d 286 (2018). In *Anderson*, our Supreme Court held "that a magistrate's duty at a preliminary examination is to consider all the evidence presented, including the credibility of witnesses' testimony, and to determine on that basis whether there is probable cause to believe that the defendant committed a crime, i.e., whether the evidence presented is 'sufficient to cause a person of ordinary prudence and caution to be conscientiously entertain a reasonable belief of the accused's guilt.' " *Id*. at 178, quoting *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted). However, our Supreme Court denied defendant's application for leave to appeal from the circuit court's order denying defendant's motion to quash or reduce the child abuse charges against her because it was "not persuaded that the question should be reviewed . . . ." *Eubanks*, 503 Mich at 893.

On remand, this Court once again considered plaintiff's application for leave to appeal as to the felony-firearm charges, and again reversed the circuit court's decision to deny plaintiff's motion to reinstate them:

> Pursuant to the Supreme Court's order of November 16, 2018, this Court has reconsidered the application in light of *People v Anderson*, 501 Mich 175; 912 NW2d 503 (2018). The Court again orders, pursuant to MCR 7.205(E)(2), that the April 18, 2018 order of the Wayne Circuit Court denying the motion to reinstate the two counts of felony firearm is REVERSED.

> The magistrate found credible defendant's statements that she was afraid of guns and she did not know the gun was in the drawer on the shooting date. Under *Anderson*, the magistrate properly could make that determination. *Anderson*, 501 Mich at 188 (ruling that, when reviewing that evidence, a magistrate has the duty to pass judgment regarding witness' credibility). However, the magistrate's ultimate ruling was not based on credibility, but instead was based on the magistrate's inference that the gun was not "accessible and available" to defendant based on the facts of the case. Notwithstanding, record evidence established that defendant was aware that her husband kept loaded handguns in the drawer of their bedroom dresser, which was only 30 inches tall and therefore accessible to their three-year-old son. Although defendant may not have known that the specific firearm was in the drawer on the date of the shooting, the evidence was undisputed that defendant was aware that her husband had several guns and knew he did not keep all of his guns locked in the safe. The gun was accessible and available to defendant's son to use to shoot the other children. Therefore, an inference may be drawn that the gun was accessible and available to defendant, who was with her son in the home. The evidence thus supported logical inferences to show probable cause for a reasonable person to believe that defendant committed firearm felonies.

> The trier of fact, not the magistrate, is to determine which inferences may be drawn from the evidence. *People v LaFountain*, 495 Mich 968, 969; 844 NW2d 5 (2014). The trier of fact also is to decide the weight to be given to those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Accordingly, the district court abused its discretion in declining to bind over defendant on the firearm charges and the circuit court should have reinstated the charges. The case is REMANDED to the district court for further proceedings consistent with this order. [*People v Eubanks*, unpublished order of the Court of Appeals, entered December 12, 2018 (Docket No. 343714).]

Defendant did not file an application for leave to appeal with our Supreme Court regarding this Court's order.

In the interim, Judge Michael Hathaway had taken over Judge Cynthia Gray Hathaway's docket. At that point, the parties were waiting for the Supreme Court's ruling on plaintiff's appeal and they agreed to a bench trial.

In April 2019, consistent with this Court's December 2018 remand order as to the felony-firearm charges, the district court bound over defendant for trial on two counts of felony-firearm. During that proceeding, defense counsel repeated her belief that this Court had made an inference that was a mischaracterization of the evidence presented during the preliminary examination. The district court reiterated that it had reviewed the videotape of defendant's police interview and its "memory of that was that [defendant] knew that at times [her husband] kept weapons in that dresser drawer."

Later, defendant was scheduled to be arraigned on the felony-firearm charges and waived formal arraignment. During that proceeding, Judge Michael Hathaway requested a second amended information.[4] And, after the parties explained the appellate history of this case as it related to the felony-firearm charges, Judge Hathaway asked for copies of the appellate courts' orders, which he was informed had been provided to his clerk via email. Defense counsel further indicated that she would file a motion to quash.

In June 2019, defendant filed her third motion to quash or reduce the charges. This motion largely mirrored defendant's earlier motions to quash or reduce the child abuse charges, but added allegations that defendant did not have actual or constructive possession of the firearm as to the felony-firearm charges. In particular, defendant argued that her statements during the police interview had been misconstrued and were clear that she had no idea where the firearm was located. Consequently, defendant asserted that she could not have constructively possessed the

---

[4] No second amended information appears in the record below.

It was also mentioned that the codefendant had pleaded and was sentenced to two years' probation.

firearm. Despite these additional allegations in the motion to quash, defendant's supporting memorandum of law was identical to those previously filed. In other words, defendant's memorandum only addressed the child abuse charges and *Murphy*. Nowhere in the motion or memorandum did defendant disclose that she had filed earlier motions to quash and reduce the charges, that Judge Cynthia Gray Hathaway had denied defendant's motion, or that this Court and our Supreme Court had declined to review the circuit court's denial order on interlocutory appeal. On top of that, plaintiff never responded to defendant's third motion to quash.

At the final pretrial conference, Judge Michael Hathaway granted defendant's motion to quash and dismissed the second-degree child abuse charges after determining that *Murphy* controlled the outcome in this case because defendant did not commit an act. During the hearing, Judge Hathaway mentioned that the magistrate had "rightly" dismissed the felony-firearm charges, seemingly failing to recollect that defendant had waived formal arraignment on the felony-firearm counts and that the appellate courts' orders, including this Court's order of peremptory reversal regarding the felony-firearm charges had been provided to his clerk. Judge Hathaway then entered an order dismissing five counts of child abuse.[5]

Plaintiff filed a motion for reconsideration, arguing that, under the law-of-the-case doctrine, the trial court was obligated to conclude there was probable cause for the second-degree child abuse charges on the basis of this Court's earlier conclusion that there was sufficient evidence to bindover the felony-firearm charges. In plaintiff's motion for reconsideration, plaintiff never mentioned defendant's prior motions to quash or reduce the child abuse charges, Judge Cynthia Gray Hathaway's denial of defendant's motion to quash or reduce the child abuse charges, or defendant's subsequent failed appellate challenge.

Judge Michael Hathaway scheduled oral argument on plaintiff's motion so that he "could figure out" what was "going on with this case" as plaintiff's request for reconsideration had "blind[]sided him with some information that [he] never knew about or had before." During the hearing, defendant's attorney represented that she had spoken to this Court's staff, who advised that she had "the right to do the motion to quash and start the process over." Judge Hathaway then stated that he had reviewed the appellate history of this case, adding: "I had absolutely no idea that any of that had gone on." Judge Hathaway questioned plaintiff's failure to respond to defendant's motion to quash or reduce the charges, noting that, at least, plaintiff should have mentioned the law-of-the-case doctrine if it believed it applicable and plaintiff should have responded to the court's earlier statement that the magistrate had "rightly" dismissed the felony-firearm counts. Judge Hathaway frankly admitted that, when he granted defendant's motion to quash, he thought he was only doing so as to the child abuse charges. Judge Hathaway further questioned how the law-of-the-case doctrine could apply when this Court had never ruled upon the child abuse counts.

---

[5] Defendant had been charged with eight counts of second-degree child abuse and two counts of felony-firearm.

Judge Hathaway also questioned why there were two different Court of Appeals' numbers, but plaintiff did not have an answer without reviewing the appellate order.[6]  Again noting that this Court's orders "never addressed the viability of the child abuse . . . cases," Judge Hathaway denied plaintiff's motion for reconsideration and amended his earlier order to dismiss to include the felony-firearm counts.  At plaintiff's request, pursuant to its discussion with this Court's Clerk's Office, Judge Hathaway entered a nunc pro tunc order dismissing all charges against defendant, including the felony-firearm counts.

This appeal followed.

III.  DISCUSSION

A.  LAW-OF-THE-CASE DOCTRINE

Plaintiff first argues the law-of-the-case doctrine required the trial court to conclude there was probable cause with regard to the second-degree child abuse charges.  Plaintiff's argument rests on the proposition that when this Court reversed the decision of the trial court denying plaintiff's motion to amend the information to add the felony-firearm charges, it implicitly concluded there was probable cause to bind over defendant on the second-degree child abuse charges.  In other words, because this Court concluded there was probable cause that the crime of felony-firearm was committed, it necessarily concluded there was probable cause that the underlying charged felony (second-degree child abuse) was committed as well.  Recognizing that its argument logically applied to only two counts of second-degree child abuse, plaintiff maintained that there was no factual difference as to the remaining child abuse counts, and, therefore, they too should stand.

Initially, we note that "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."  *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted).  In this case, plaintiff raised the issue in a motion for reconsideration and the trial court addressed it.  Consequently, this issue is preserved for our review.  *Id*.  See generally *People v Conner*, 209 Mich App 419, 422; 531 NW2d 734 (1995).

We review de novo the issue of whether the law-of-the-case doctrine applies.  See *People v Robinson (After Second Remand)*, 227 Mich App 28, 33-37; 575 NW2d 784 (1997) (appearing

---

[6] As the record below contains no copy of defendant's appellate filings in Docket No. 344193 and the parties failed to mention any appellate proceedings pertaining to the child abuse charges, the trial court's confusion is somewhat understandable given its high-volume docket.  Nevertheless, the record contains Judge Cynthia Gray Hathaway's order denying defendant's motion to quash the child abuse charges along with a transcript of that proceeding as well as the appellate courts' subsequent orders.

to review application of the law-of-the-case doctrine de novo); see also *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013) ("Whether the law of the case doctrine applies is a question of law that [this Court] review[s] de novo."). The law of the case doctrine "bars reconsideration of an issue [decided] by an equal or subordinate court during subsequent proceedings in the same case." *People v Mitchell*, 231 Mich App 335, 340; 586 NW2d 119 (1998). "Under the law of the case doctrine, 'if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.' " *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000), quoting *CAF Investment Co v Saginaw Twp*, 410 Mich 423, 454; 302 NW2d 164 (1981). "Law of the case applies . . . only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Id*. at 260. However, "[p]articularly in criminal cases, the law of the case doctrine is not inflexible and need not be applied if it will create an injustice." *Robinson (Aft Second Rem)*, 227 Mich App at 33.

When plaintiff initially sought leave to appeal the trial court's denial of its motion to amend the information, it framed the issue as follows:

> A defendant has constructive possession of a firearm when it can be inferred that the defendant had knowledge of the firearm's location and access to that location. Here, defendant knew that the firearm was in the dresser drawer in her bedroom. Did the trial court abuse its discretion when it denied the People's motion to amend the information?

The sole legal issue from plaintiff's prior appeal was whether the trial court abused its discretion in determining that there was no probable cause to conclude that defendant had constructive possession of the firearms in her house. This Court agreed with plaintiff that the trial court abused its discretion in denying plaintiff's motion to reinstate the felony-firearm charges. *Eubanks*, unpub order of the Court of Appeals, entered December 12, 2018 (Docket No. 343714). In doing so, this Court's recitation of the relevant facts was limited to the question of defendant's constructive possession of the firearm as was this Court's dispositional ruling. *Id*. Therefore, this Court did not explicitly decide whether probable cause existed regarding the child abuse charges. *Id*.

Plaintiff, however, argues that this Court implicitly found the existence of probable cause regarding the child abuse charges. Plaintiff is correct that the law-of-the-case doctrine applies to issues decided, either explicitly or implicitly. *Lopatin*, 462 Mich at 260. But when the Supreme Court remanded this case to this Court to reconsider plaintiff's application for leave to appeal regarding the felony-firearm charges, the district court had already determined that there was probable cause as to the second-degree child abuse charges. Moreover, the trial court had denied defendant's first attempt to have the child abuse charges dismissed, and this Court, as well as our Supreme Court, had passed on reviewing defendant's separate interlocutory challenge to that

decision.[7] *Eubanks*, unpublished order of the Court of Appeals, entered July 16, 2018 (Docket No. 344193), lv den 503 Mich at 893. Therefore, in issuing our December 2018 order as to the felony-firearm charges, this Court accepted the existence of probable cause for the underlying felony charge of second-degree child abuse as a factual matter rather than rendering an implicit legal decision on that question.[8] Accordingly, under the circumstances presented in this criminal case, we conclude that the circuit court correctly decided that the law-of-the-case doctrine did not preclude later dismissal of the second-degree child abuse charges. See e.g., *People v Garcia*, 203 Mich App 420, 426; 513 NW2d 425 (1994).

## B.  SECOND-DEGREE CHILD ABUSE

Next, plaintiff argues the trial court erred when it granted defendant's motion to quash the second-degree child abuse charges because it incorrectly relied on *Murphy*. Plaintiff asserts that the evidence presented at preliminary examination was sufficient to support the district court's bind over on second-degree child abuse charges, citing *People v Head*, 323 Mich App 526; 917 NW2d 752 (2018).

This Court reviews for an abuse of discretion a trial court's decision on a motion to quash the information. *People v Zitka*, 325 Mich App 38, 43; 922 NW2d 696 (2018). "An abuse of discretion occurs when a decision falls outside the range of reasonable and principled outcomes . . . ." *Id.* (quotation marks and citation omitted). And "[t]o the extent that a lower

---

[7] We note that plaintiff has never contended that Judge Michael Hathaway did not have the authority to set aside Judge Cynthia Gray Hathaway's order denying defendant's initial motions to quash or reduce the child abuse charges. See MCR 2.613(B) ("A judgment or order may be set aside or vacated, . . . only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in the matter."). Indeed, from Judge Michael Hathaway's on-the-record comments, it appears that he was unaware of defendant's interlocutory application for leave to appeal Judge Cynthia Gray Hathaway's order denying defendant's motion to quash or reduce the child abuse charges. Consequently, we offer no opinion on the propriety of defendant filing a third motion to quash or reduce the charges without disclosing that the prior judge had denied an earlier motion grounded on the same facts and identical arguments.

[8] Because neither this Court's order nor the Supreme Court's order expressed an opinion on the merits in declining to review defendant's interlocutory challenge to Judge Cynthia Gray Hathaway's denial of defendant's initial motion to quash or reduce the second-degree child abuse charges, the law-of-the-case doctrine does not apply as to those orders. *Lopatin*, 462 Mich at 260.

court's decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *Id*. at 44 (quotation marks and citation omitted).

Under MCL 750.136b(3), a person is guilty of second-degree child abuse under any of the three listed circumstances:

> (a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.
>
> (b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.
>
> (c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results. [MCL 750.136b(3).]

A child is an unemancipated person under 18. MCL 750.136b(1)(a). A person is "a child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person." MCL 750.136b(1)(d). Serious physical harm is "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, . . . a . . . bone fracture, [or] . . . internal injury . . . ."

The child-abuse statute also specifically defines an omission as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." MCL 750.136b(1)(c).

In this case, although the prosecution charged defendant under MCL 750.136b(3)(b), the parties and courts below repeatedly referred to defendant's reckless acts, implicating MCL 750.136b(3)(a). In light of the magistrate's ability to amend the charge at the conclusion of the preliminary examination and the reliance below on cases addressing the commission of a reckless act, we will consider this matter under MCL 750.136b(3)(a) as well. See MCL 766.13.

"MCL 750.136b(3)(b) requires evidence that a defendant's act could *probably* result in serious harm to the child, regardless of whether the harm actually occurs." *People v Nix*, 301 Mich App 195, 202; 836 NW2d 224 (2013). Second-degree child abuse is a general intent crime and requires merely the intent to do an act, "but perhaps not the consequences of the act." *People v Maynor*, 256 Mich App 238, 242; 662 NW2d 468 (2003), aff'd 470 Mich 289 (2004).

"Generally, determining whether an act was reckless is a jury question." *Murphy*, 321 Mich App at 360, citing *People v Edwards*, 206 Mich App 694, 696-697; 522 NW2d 727 (1994). In *Murphy*, the defendant was charged with second-degree child abuse under MCL 750.136b(3)(a), after her 11-month-old daughter ingested a morphine pill that was laying on the carpet and died. 321 Mich App at 357-358. The prosecutor argued defendant's daughter "died because of her

parents' 'reckless acts,' which she contended consisted of 'their inaction' and their inability to protect their child and provide a safe home environment." *Id*. at 358. The defendant challenged the sufficiency of the evidence of her conviction, and this Court vacated her conviction. *Id*. at 358-359.

This Court held that "[t]o establish second-degree child abuse based on a reckless act, the prosecution must prove (1) that the defendant was a parent or a guardian of the child or had care or custody of or authority over the child, (2) that the defendant committed a reckless act, (3) that, as a result, the child suffered serious physical harm, and (4) that the child was under 18 years old at the time." *Id*. at 360. This Court defined the term "act" as " '1. Something done or performed, esp. voluntarily; a deed,' or '2. The process of doing or performing; an occurrence that results from a person's will being exerted on the external world[.]' " *Id*. at 361, quoting Black's Law Dictionary (10th ed.) (alteration in original). Thus, this Court held that "in order to constitute a 'reckless act' under the statute, the defendant must do something and do it recklessly." *Id*. "Simply failing to take an action [did] not constitute an act." *Id*. Because the prosecutor failed to present any evidence of an affirmative act by the defendant that led to her child's death, and, instead, "directed the jury to Murphy's reckless inaction, i.e., her failure to clean her house to ensure that morphine pills were not in [her child's] reach," the defendant's conviction had to be vacated. *Murphy*, 321 Mich App at 361.

In *Head*, this Court once again addressed the question of whether there was sufficient evidence to sustain the defendant's conviction under MCL 750.136b(3)(a) (reckless act), when the defendant's stored an illegal, loaded, and unsecured shotgun in his accessible bedroom closet and left his 10-year-old daughter and 9-year-old son unsupervised; the defendant's daughter then fatally shot her brother. *Head*, 323 Mich App at 530-531. This Court rejected the defendant's argument that *Murphy* required reversal of his second-degree child abuse conviction, holding:

> Defendant committed reckless acts by storing a loaded, short-barreled shotgun in his unlocked bedroom closet and then allowing his children to play in the room while unsupervised. Contrary to defendant's argument, the present case is nothing like *Murphy*, in which this Court held that the prosecutor presented no evidence of an affirmative act by the defendant that led to the child's death but instead presented evidence only of the defendant's inaction, i.e., failing to clean her house to ensure that morphine pills were not in reach of the child. *Id*. The key evidence here consisted not only of defendant's inaction but of his *affirmative* acts of storing a loaded shotgun in an unlocked closet of defendant's bedroom and allowing his children to play in that bedroom while unsupervised. Moreover, defendant knowingly and intentionally committed an act that was likely to cause serious physical harm to a child because defendant stored a loaded, illegal, short-barreled shotgun in a readily accessible location where he allowed his young children to play while unsupervised. [*Head*, 323 Mich App at 536.]

As to defendant's own children, plaintiff charged defendant with "knowingly or intentionally commit[ting] an act likely to cause serious physical harm to a child by maintaining a home environment without ensuring that her child was protected from known hazards, to wit: loaded firearms accessible to her child." Regarding the daycare children, defendant was charged with "knowingly or intentionally commit[ting] an act likely to cause serious physical harm to a child by agreeing to provide daycare and accepting the child into her home without ensuring that the child was protected from known hazards, to wit: loaded firearms accessible to children." The gravamen of these charges is defendant's affirmative act (having children in her home) coupled with her failure to act to ensure loaded guns were not accessible to them. This is no different than the prosecution's allegations in *Murphy*, permitting a child to play without cleaning and identifying hazards, including the morphine pill.

But, in light of the magistrate's ability to amend the charge at the conclusion of the preliminary examination, MCL 766.13, and the parties' and courts' repeated discussion of whether defendant committed a reckless act, we also consider whether bindover was warranted under MCL 750.136b(3)(a).

Defendant accepted six children under the age of four into her unlicensed home daycare with knowledge that her husband kept unsecured, loaded weapons therein. Defendant knew that only one loaded gun was secured in her husband's gun safe. Defendant deliberately chose not to know specifically where her husband had placed the remaining guns or ensure that the fully loaded, unsecured weapons were inaccessible to her young charges and her own young children. Defendant further admitted that she knew her husband had placed unsecured guns in their bedroom's dresser drawer, which was easily accessible to a toddler, on prior occasions. Furthermore, defendant was aware that 3-year-old CE, who shot the other children, was fascinated with guns. Defendant had warned her husband about CE's interest in guns and warned her husband that CE was able to access that particular dresser drawer—one that contained two fully-loaded, unsecured handguns on the morning of the shooting. Moreover, defendant knew that CE was upstairs in their bedroom with the other children without adult supervision at the time of the shooting. This evidence demonstrates that defendant committed a reckless act that resulted in CE shooting and wounding the two other children.

The facts here are more akin to *Head*, where this Court recognized the danger an accessible loaded weapon poses to young children who are unsupervised by an adult. 323 Mich App at 533. As in *Head*, defendant allowed the children to play in her room unsupervised while knowing that her husband sometimes stored a loaded gun in the accessible dresser drawer. And while defendant had not personally stored the guns in this manner as in *Head*, defendant consciously chose not to ascertain that the guns were inaccessible when she allowed the children to play upstairs unsupervised.

To the extent that defendant argues that she was not aware of the location of the firearm or that she assumed her husband had safely stored the firearm, those arguments are unavailing because the district court found that there was probable cause to support the finding that defendant

"knew at times that the guns were in the door [sic drawer] in the upstairs bedroom or in [her husband's] backpack." The circuit court did not find that the district court clearly erred in that finding. Whether a factfinder will conclude that defendant was aware of the loaded unsecured firearm beyond a reasonable doubt is a question for a future date.

Considering all of the evidence presented during the preliminary examination, two charges of second-degree child abuse under MCL 750.136b(3)(a) (reckless act) were supported by a preponderance of the evidence. Accordingly, the circuit court erred in granting defendant's motion to quash or reduce two second-degree child abuse charges and the accompanying felony-firearm charges against defendant.[9] The trial court properly dismissed the remaining six child-abuse counts.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Anica Letica

---

[9] To the extent that defendant argues that bindover on the felony-firearm counts was not supported, this issue is not properly before us, and, in any event, on this question, we are bound by the law-of-the-case doctrine.