*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MILES CALVIN BLAKLEY,

Defendant-Appellant.

UNPUBLISHED
July 11, 2025
12:08 PM

No. 369672
Kalamazoo Circuit Court
LC No. 2021-001496-FH

Before: MALDONADO, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of operating while intoxicated (OWI), third-offense, MCL 257.625(1)(a); MCL 257.625(9)(c). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to an eight-month jail sentence. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the evening of August 8, 2021, Deputy Duryl Cook of the Kalamazoo County Sheriff's Department was on road patrol when he observed traffic backing up at a green light because a van was stopped in the right lane. As Deputy Cook turned his patrol vehicle around to assist the driver, he noticed that defendant was behind the wheel of the van. Defendant exited the van and told Deputy Cook that the power steering in the van had stopped working. Deputy Cook smelled alcohol on defendant's breath, and noted that defendant's speech was slightly slurred, he was speaking slowly, and he staggered in the roadway while approaching the deputy's vehicle. Deputy Cook asked defendant if he had had anything to drink. After initially denying that he had, defendant said that he had a "limeade" at an Eagle Scout event earlier that evening, although defendant did not specifically state whether the drink had contained alcohol.

Deputy Cook asked defendant to perform several field sobriety tests. Defendant failed two of the tests, including the "horizontal nystagmus gaze" test and the "finger count" test, but successfully counted backward from 80 to 60. After defendant failed the field sobriety tests, he agreed to take a preliminary breath test, but he failed to provide an adequate breath sample 16 times. Defendant told Deputy Cook that he had an inhaler for a lung disease, and asked Deputy Cook to retrieve it from the van; however, Deputy Cook could not locate the inhaler in the van,

-1-

which was full of trash to the extent that the driver's seat was the only possible space for someone to sit in the vehicle. Deputy Cook saw the keys in the van's ignition, and his body camera footage showed that the van made a beeping sound when the door opened and that the lights were on. Defendant was permitted to enter the van and retrieve his inhaler, but defendant still could not successfully provide a breath sample after using it. Deputy Cook believed that defendant was deliberately trying to avoid providing a breath sample. Defendant was subsequently placed under arrest. Deputy Cook secured a search warrant for a blood draw and drove defendant to the hospital, where a blood sample was taken; it showed that defendant's blood alcohol content was 0.152 grams of alcohol per 100 milliliters of blood.

At trial, Deputy Cook testified that there was no one else at the scene and that, although he never directly asked defendant if he was driving the van, defendant never suggested that anyone else had been driving. Defendant was convicted and sentenced as described. This appeal followed.[1]

## II. STANDARD OF REVIEW

"We review de novo challenges to the sufficiency of the evidence." *People v Murphy*, 321 Mich App 355, 358; 910 NW2d 374 (2017). "[T]his Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "This standard of review is deferential to the fact-finder that weighed the evidence to determine the criminal defendant was guilty beyond a reasonable doubt." *People v Prude*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165664); slip op at 5. "The scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## III. ANALYSIS

Defendant argues that the evidence produced at trial was insufficient to prove beyond a reasonable doubt that he had operated a vehicle while intoxicated. We disagree.

"It is a fundamental principle of our system of justice that an accused's guilt must be proved beyond a reasonable doubt to sustain a conviction." *People v Hubbard*, 387 Mich 294, 299; 196 NW2d 768 (1972). "Accordingly, a conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand." *Prude*, ___ Mich at ___; slip op at 4-5. "A prosecutor need not present direct evidence of a defendant's guilt. Rather, circumstantial evidence and reasonable inferences arising from that evidence can

---

[1] Defendant's original appellate counsel passed away after filing defendant's claim of appeal and brief on appeal. Defendant's appeal was adjourned to allow the appointment of substitute appellate counsel. See *People v Blakley*, unpublished order of the Court of Appeals, entered October 21, 2024 (Docket No. 369672).

constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks, citation, and alteration omitted).

"[Operating while intoxicated] is a hybrid version of two offenses: MCL 257.625(1)(a) prohibits operating a motor vehicle under the influence of intoxicating liquor (OUIL) and MCL 257.625(1)(b) prohibits operating with an unlawful bodily alcohol content (UBAL)." *People v Hyde*, 285 Mich App 428, 447-448; 775 NW2d 833 (2009). Accordingly, an OWI conviction requires proof of three elements:

> (1) the defendant operated a motor vehicle[;] (2) on a highway or other place open to the general public or generally accessible to motor vehicles[; and] (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood. [*Id*. at 448.]

In defendant's brief on appeal prepared by his original appellate counsel, defendant conceded that he was intoxicated and that the van was on a highway open to the public, but he argued that the prosecution had failed to present sufficient evidence that he had been "operating" the van. At oral argument, defendant's substitute appellate counsel presented a different argument: she conceded that there was sufficient evidence to conclude that defendant had been "operating" the van, but argued that the evidence was insufficient to conclude that his intoxication had occurred prior to or while operating it. In other words, counsel argued that a reasonable doubt existed as to whether defendant had become intoxicated after stopping the van. We disagree with defendant's original argument and the new argument presented at oral argument.

MCL 257.35a(a) defines "[o]perate" or "operating" to include "[b]eing in actual physical control of a vehicle." In *People v Wood*, 450 Mich 399, 404-405; 538 NW2d 351 (1995), the Michigan Supreme Court stated:

> We conclude that "operating" should be defined in terms of the danger the OUIL[2] statute seeks to prevent: the collision of a vehicle being operated by a person under the influence of intoxicating liquor with other persons or property. Once a person using a motor vehicle as a motor vehicle has put the vehicle in motion, or in a position posing a significant risk of causing a collision, such a person continues to operate it until the vehicle is returned to a position posing no such risk.

In this case, Deputy Cook observed defendant's van stopped in the right driving lane of a busy road, causing traffic to back up at the light. Deputy Cook saw defendant behind the wheel of the van when he was turning his patrol car around to assist defendant. Deputy Cook testified that the only place to sit in the vehicle was in the driver's seat because of the amount of trash throughout the vehicle. Deputy Cook observed the keys in the ignition, and the body camera

---

[2] The offense of operating under the influence of liquor (OUIL) under former MCL 257.625(1) was amended by 2003 PA 61 to refer instead to operating while intoxicated (OWI).

footage showed that the door made a beeping sound when opened, and that the lights were on. Deputy Cook testified that there was no one else at the scene and that, although he never directly asked defendant if he was driving, defendant never suggested that anyone else had been driving the van.

Although there was no direct evidence presented that defendant had driven the van before it stopped in the road, there was significant circumstantial evidence presented to support that inference. See *Nowack*, 462 Mich at 400. It was reasonable for the jury to infer that defendant was operating his vehicle while impaired before the time at which it became inoperable. When viewing the evidence in a light most favorable to the prosecution, there was sufficient circumstantial evidence presented to support the jury's verdict. See *Robinson*, 475 Mich at 5.

Similarly, there was sufficient circumstantial evidence introduced that defendant was intoxicated while driving the van before it stopped on the road. Deputy Cook observed that defendant was seated behind the wheel of the van, which was stopped in a driving lane of a multi-lane road at a traffic light and backing up traffic. As discussed, defendant's demeanor, smell, and performance on two field sobriety tests led Deputy to Cook to conclude that defendant was intoxicated. Deputy Cook testified that the van was running, with the keys in the ignition, and the headlights on. Defendant never made any statements indicating that he had stopped the van first and then consumed alcohol; rather, defendant claimed he had had a "Limeade" prior to driving the van. A reasonable juror could have concluded that defendant's intoxication had occurred prior to and during his operation of the van. Although it is not outside the realm of physical possibility that defendant stopped his vehicle and immediately consumed enough alcohol to raise his blood alcohol level to 0.152 grams per 100 milliliters of blood, "the prosecution is only required to produce sufficient evidence to establish guilt; it is not required to negate every reasonable theory consistent with a defendant's innocence." *People v Hardiman*, 466 Mich 417, 430; 646 NW2d 158 (2002).

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Mark T. Boonstra
/s/ Randy J. Wallace