*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 18, 2021

Plaintiff-Appellee,

v

No. 351177
Wayne Circuit Court
LC No. 18-002440-01-FC

RICHARD AVON SANDERS, JR.,

Defendant-Appellant.

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

The prosecutor charged Richard Avon Sanders, Jr., with several offenses arising from the murder of Macita Mahone in the early morning hours of February 17, 2018. In his first trial, a jury convicted Sanders of being a felon in possession of a weapon and a connected felony-firearm charge, but could not reach a unanimous verdict on charges of murder and mutilation of a dead body. A mistrial was declared as to those offenses. Sanders appealed and this Court affirmed his convictions and sentences. *People v Sanders*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2020 (Docket No. 347167).

Following a second trial, a jury acquitted Sanders of first-degree murder and mutilation charges and convicted Sanders of the lesser included offense of second-degree murder. Sanders challenges the prosecution's injection of highly prejudicial material during her cross-examination of Sanders and the sufficiency of the evidence supporting his second-degree murder conviction, and contends that his within-guidelines sentence is disproportionate and amounts to cruel and/or unusual punishment. We discern no error and affirm.

## I. BACKGROUND

Macita Mahone's body was discovered around 6:45 a.m. on February 17, 2018. Her body had been dragged from the side of the road and left between two houses near the intersection of Evanston and Annsbury in Detroit. Mahone died from a gunshot wound to the head fired behind her left ear at point blank range; the bullet travelled forward and up, exiting near her right scalp. Someone had tried to burn Mahone's dead body using gasoline; approximately 50% of her body was covered in burns.

Sanders admittedly spent the evening with Mahone and another woman at a motel in the city of Detroit. He and Mahone left alone and travelled to a gas station where Mahone caused a scene. Sanders then drove Mahone to the intersection of Evanston and Annsbury. Sanders claimed that every step of this trip was dictated by Mahone after receiving phone calls. The police created a compilation of footage from various surveillance cameras showing Sanders's route. The moment of Mahone's death was not captured on camera. Rather, a security camera on a private residence captured an image of Sanders's headlights as his vehicle pulled up and parked about a block away. Within seconds of the vehicle parking, a popping noise is heard. The vehicle remained parked for approximately five minutes and then pulled away, turning a corner far from the camera.

On February 24, 2018, Sanders brought his vehicle to a body shop for the replacement of his passenger side front window. The repair man found a handgun on the floor by the front passenger seat while he was vacuuming up broken glass. Sanders claimed that the gun did not belong to him and he had never seen it before. He also claimed that his window was broken only that day, by a former girlfriend who confronted him in a gas station parking lot.

On February 28, Sanders was pulled over for a traffic violation and could not produce his driver's license. The officer observed a handgun (the same gun found by the repair man) lodged between the driver's seat and center console. The officer arrested Sanders. During the subsequent search of Sanders's vehicle, blood was found between the bottom and back cushion of the front passenger seat and between the seat and the console. Testing matched this blood to Mahone.

Sanders initially denied that he shot Mahone. He claimed that Mahone left his vehicle and he did not know happened to her thereafter. As time wore on, however, Sanders accused Christopher Hightower of shooting Mahone. Sanders claimed Mahone had opened the passenger side door and turned her body to exit the vehicle when Hightower approached. Hightower pushed Mahone back into the vehicle and shot her in the head. Sanders described that he jumped out of the vehicle and ran between two houses across the street. When he returned five minutes later, Mahone's body and Hightower were gone. Sanders claimed that he recognized Hightower at the time of the shooting by face, but not by name. Sanders was afraid to accuse Hightower because he lived near his ex-wife and child. Sanders later noted Hightower in the background of a news report during which his acquaintance Tanae Ellison was being interviewed. Sanders learned Hightower's name through Ellison. Sanders claims that a cigarette butt found near Mahone's body belonged to Hightower. But the prosecution's expert witness did not definitively link the evidence to Hightower; she merely stated that the DNA evidence bore 8.8% more similarity to Hightower than Sanders.

## II. MISTRIAL

Sanders took the stand in his own defense at trial. On direct, he explained how he contacted Ellison to ascertain Hightower's name. On cross-examination, the prosecutor inquired, "Do you recall a conversation with [Ellison] dated February 25th, 2018. This is from your phone where you're talking about, uh, [Ellison's] asking if you're gonna kill [Ellison]?" Sanders responded, "What?" and defense counsel immediately objected.

The court excused the jury. In the jury's absence, Sanders requested a mistrial, complaining that the question was irrelevant and highly prejudicial. The prosecutor retorted that the evidence sought was relevant—Ellison gave Sanders Hightower's name allegedly after expressing concern that Sanders would kill her. Ellison's concern that Sanders would kill her mere days after Mahone was killed made it more likely that Sanders killed Mahone, the prosecutor argued. The court found the evidence inadmissible because its relevance was flimsy at best and it was inflammatory and more prejudicial than probative. But the court denied Sanders's motion for a mistrial.

Over Sanders's objection, the court provided further instruction to the jurors upon their return, reminding them that the attorney's questions were not evidence, only the witness's answers:

> Um, just, uh, a brief reminder. Um, as we continue to proceed and it's in the preliminary instructions and you hear it again in the final instructions[,] questions are not evidence, okay. Uh, only the answers are evidence. So, um, I want you to keep that in mind.

> Um, just because somebody suggest [sic] something in a question doesn't mean it's true. It's the answer that's the telling part, okay. Um, and that's very important because the only thing you can, you can consider as evidence are the answers to questions and the other things that are properly admitted. Videos, photographs, reports, things of that nature. Audio recordings. So, those are the only things that you can consider, all right.

"We review for an abuse of discretion a trial court's decision regarding a motion for a mistrial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (quotation marks and citations omitted). Relevant to this analysis is "whether the prosecutor intentionally presented the information to the jury or emphasized the information." *Id.*

The prosecutor's unanswered question did not impair Sanders's rights or incurably taint his trial. The question was brief and isolated. It was posed on the sixth day of trial, took up all of a few seconds, and was not answered. See *People v Waclawski*, 286 Mich App 634, 709; 780 NW2d 321 (2009) (considering the isolated nature of improper testimony when determining whether the defendant was denied a fair trial). Even though deemed irrelevant, it does not appear that the prosecutor intentionally attempted to inject inflammatory material into the trial; she provided a justification for admission of the evidence, although her petition was denied.

Moreover, any error was cured. The jury was instructed, both at the beginning of trial and shortly after the improper question, that the lawyers' questions were not evidence, only the witnesses' responses were. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). On this record, we discern no error in the court's denial of Sanders's request for a mistrial.

## III. SUFFICIENCY OF THE EVIDENCE

Sanders further challenges the sufficiency of the evidence supporting his second-degree murder conviction. Specifically, Sanders points to the lack of DNA or firearm evidence linking him to the crime, as well as the absence of any eyewitnesses. Thus, Sanders merely challenges the evidence supporting his identity as the shooter.

We review de novo whether sufficient evidence was introduced to support a defendant's conviction. *People v Murphy*, 321 Mich App 355, 358; 910 NW2d 374 (2017). "When reviewing a defendant's challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted).

There was more than sufficient evidence that Sanders was present when Mahone was killed. Surveillance footage from various cameras tracked Sanders's vehicle to the neighborhood in question. Security footage from a private residence captured Sanders's vehicle park near where Mahone's body was found. Seconds later a popping noise was recorded. Sanders's vehicle remained parked for approximately five more minutes, giving Sanders ample opportunity to drag Mahone's body between nearby houses. Sanders admitted his presence and admitted that Mahone was shot in his vehicle. However, he contended that Hightower was the shooter.

Sanders's description of the shooting was not inherently believable, creating credibility questions for the jury to resolve. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Forensic evidence revealed that Mahone was shot low in the back of her head, and the bullet traveled upward through her skull. According to Sanders, Mahone's back was facing him at the time she was shot. Given the forensic evidence, it is more likely that the fatal shot came from Sanders in the driver's seat of the vehicle. Even if Hightower were present outside the passenger-side door, he would have been required to push Mahone's head down at a strange angle to inflict the wound. The jury was also free to infer that the damage to his passenger-side window occurred as a result of the shooting rather than by his ex-girlfriend. Moreover, no evidence linked Hightower to the scene. The likely murder weapon was found inside Sanders's vehicle. Sanders denied ownership of the weapon and claimed he drove around for a week without noticing it. Given Sanders's admission that he lied to the police multiple times during his interview, the jury had more than adequate justification not to credit his version of events.

Ultimately, sufficient evidence was presented for the jury to find beyond a reasonable doubt that Sanders, and not Hightower, shot Mahone in Sanders's vehicle on the night in question.

## IV. SENTENCE

Finally, Sanders contends that his second-degree murder sentence was both disproportional and violative of the constitutional protection against cruel and/or unusual punishment. The court sentenced Sanders to 50 to 76 years' imprisonment for his second-degree murder conviction. This

sentence was within the calculated minimum guidelines range of 22½ to 56-1/4 years' imprisonment. Although Sanders challenges the length of his sentence, he does not identify any errors in scoring his guidelines or any inaccurate information upon which the court relied.

A within-guidelines sentence based on accurately scored guidelines is deemed proportionate and must be affirmed. *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), rev'd in part on other grounds 504 Mich 929 (2019). This basic rule stemming from MCL 769.34(10) was not altered by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *Lockridge* held that the minimum guidelines ranges in the legislative sentencing guidelines are advisory, rather than mandatory. *Id.* at 392. Sentences imposed post-*Lockridge* that deviate from the sentencing guidelines are evaluated for reasonableness under the principle of proportionality first articulated in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017). However, within-guidelines sentences are still considered "presumptively proportionate." *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019). And post-*Lockridge*, we still must affirm a within-guidelines sentence when there is no allegation of scoring errors or that the court relied on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), citing MCL 769.34(10). As this Court has held, "*Lockridge* did not alter or diminish MCL 769.34(10)." *Schrauben*, 314 Mich App at 196 n 1. See also *People v Posey*, ___ Mich App ___; ___ NW2d ___ (Docket No. 345491, 2020), slip op at 8-9.

Sanders failed to preserve his constitutional challenge to his sentence by raising it below. See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). As such, our review is limited to plain error affecting Sanders's substantial rights. *Id*.

MCL 769.34(10) is not applicable to claims of constitutional error. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Under the Eighth Amendment to the United States Constitution, "cruel and unusual punishments" may not be inflicted upon defendants. Similarly, the Michigan Constitution prohibits the infliction of "cruel or unusual punishment." Const 1963, art 1, § 16. "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011).

Sanders's sentence is neither cruel nor unusual. Sanders committed one of the most egregious offenses under our criminal code. A jury determined that he killed Mahone at point-blank range with no indication of any excuse or justification. Further, because Sanders was sentenced within the guidelines minimum sentence range, his punishment was proportional when compared to punishments for other crimes in this state. *Id*. See also *People v Smith*, 482 Mich 292, 321-322; 754 NW2d 284 (2008) (MARKMAN, J., concurring) (noting that the goal of the sentencing guidelines is to impose "reasonably uniform punishments, in which similarly situated offenders are accorded reasonably similar punishments"). Finally, Sanders offers no argument that a minimum sentence of 50 years' imprisonment is cruel and/or unusual in light of how other states punish second-degree murder. See *Bowling*, 299 Mich App at 559-560 (noting an appellant may not leave it to this Court to find the basis to support his or her claim). Looking to the criminal codes of other states, it appears that Sanders could make no such argument. See, e.g., ALASKA STAT 12.55.125(a) (2020) (requiring a sentence of between 30 and 60 years' imprisonment for

first-degree murder, which the facts of this case would have fallen under); IND CODE 35-50-2-3(a) (2020) (requiring a sentence of between 45 and 65 years' imprisonment for murder). Accordingly, Sanders is not entitled to resentencing.

We affirm.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher